# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HEATHER MCPHEE, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | )    Case No.: 1:25-cv-04409 (AHA) |
| | ) |
| NATIONAL FOOTBALL LEAGUE | ) |
| PLAYERS ASSOCIATION, et. al. | ) |
| | ) |
| *Defendants*. | ) |

## PLAINTIFF HEATHER MCPHEE'S REDACTED OPPOSITION TO THE NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION'S MOTION TO SEAL PORTIONS OF COMPLAINT

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION ................................................................................................. 1

ARGUMENT ......................................................................................................... 4

I.    THE *HUBBARD* FACTORS WEIGH AGAINST SEALING ........................................... 4

II.   THE NFLPA DOES NOT ARTICULATE THE SPECIFIC BASIS ON WHICH IT
MOVES TO SEAL EACH PORTION OF THE COMPLAINT ................................................ 8

III.  THE COMPLAINT DOES NOT REVEAL ANY PRIVILEGED ATTORNEY-
CLIENT COMMUNICATIONS. ........................................................................................ 10

A.    The NFLPA Failed to Provide Competent Evidence to Assert Attorney-Client
Privilege. ........................................................................................................................ 11

B.    Attorney-Client Privilege Is Limited to Communications Between an Attorney and
Client for the Purpose of Seeking or Receiving Legal Advice. .................................... 13

1.    Communications unrelated to legal advice are not privileged. .................................. 14

2.    Communications that do not rely on information obtained from the NFLPA are not
privileged. ...................................................................................................................... 15

3.    The attorney-client privilege only applies to communications. ................................ 16

4.    The existence and facts of communications are not privileged. ............................... 18

C.    Third-Party Communications Waive Privilege. ........................................................ 18

IV.   THE COMPLAINT DOES NOT CONTAIN WORK-PRODUCT PROTECTED
MATERIALS .................................................................................................................... 22

A.    NFLPA Failed to Provide Competent Evidence to Assert Work-Product Protection. . 22

B.    There Was No Anticipation of Litigation When Ms. McPhee Formed the Impressions
Described in the Complaint. ........................................................................................... 23

C.    The NFLPA Waived Any Work Product Protection for Ms. McPhee's Mental
Impressions About the Collusion Decision ................................................................... 25

V.    THE ALLEGATIONS IN THE COMPLAINT DO NOT VIOLATE MS. MCPHEE'S
DUTY OF CONFIDENTIALITY. .................................................................................... 25

CONCLUSION ................................................................................................................. 27

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. Fed. Bureau of Investigation*, 192 F.R.D. 42 (D.D.C. 2000) ........................... 11, 12

*Banneker Ventures, LLC v. Graham*, 253 F. Supp. 3d 64 (D.D.C. 2017) .................................. 22

*Boca Investerings P'Ship v. United States*, 31 F. Supp. 2d 9 (D.D.C. 1998) .............................. 14

*Cobell v. Norton*, 226 F.R.D. 67 (D.D.C. 2005) ........................................................................ 15

*Dist. Title v. Warren*, 265 F. Supp. 3d 17 (D.D.C. 2017) ........................................................ 11, 18

*E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406 (D.C. Cir. 1996) ...................................... 4, 8

*English v. Wash. Metro. Area Transit Auth.*, 323 F.R.D. 1 (D.D.C. 2017) ................................. 22

*Estate of Jones ex rel. Gay v. Beverly Health and Rehab. Sers., Inc.*, 68 F. Supp. 2d 1304 (N.D.
      Fla. 1999) ........................................................................................................................... 16

*F.T.C. v. TRW, Inc.*, 628 F.2d 207 (D.C. Cir. 1980) .................................................................. 12

*Guttenberg v. Emery*, 26 F. Supp. 3d 88 (D.D.C. 2014) ...................................................... 4, 5, 6, 7

*Haider v. Geller & Co. LLC*, 457 F. Supp. 3d 424 (S.D.N.Y. 2020) .......................................... 27

*Hoffman v. Balt. Police Dep't*, 379 F. Supp. 2d 778 (D. Md. 2005) ........................................... 26

*Hughes v. Abell*, No. 09-0220, 2012 WL 13054819 (D.D.C. Mar. 7, 2012) ......................... 21, 22

*In re Domestic Airline Travel Antitrust Litig.*, Misc. No. 15-1404, 2020 WL 3496748 (D.D.C.
      Feb. 25, 2020) ..................................................................................................................... 12

*In re Grand Jury Investigation (Sun. Co.)*, 599 F.2d 1224 (3d Cir. 1979) ................................. 10

*In re Lindsey*, 158 F.3d 1263 (D.C. Cir. 1998) .......................................................................... 11

*In re Sealed Case*, 146 F.3d 881 (D.C. Cir. 1998) ..................................................................... 23

*In re Sealed Case*, 676 F.2d 793 (D.C. Cir. 1982) ................................................................ passim

*In re Sealed Case*, 737 F.2d 94 (D.C. Cir. 1984) .................................................................. 10, 15

*In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740
      (D.C. Cir. 2006) ................................................................................................................... 11

*In re Veiga*, 746 F. Supp. 2d 27 (D.D.C. 2010) .............................................................. 12, 13, 22

*Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268 (D.C. Cir. 1991) .............................. 4

*Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142 (D.D.C. 2012) ......... 11, 12

*Mannina v. Dist. of Columbia*, No. 1:15-cv-931, 2019 WL 1993780 (D.D.C. May 6, 2019) ...... 11

*Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242 (D.C. Cir. 1977) ............... 15

*Minebea Co. v. Papst*, 355 F. Supp. 2d 526 (D.D.C. 2005) .................................................. 23, 24

*Monbo v. United States*, No. CV 23-2425 (JEB), 2023 WL 7129866 (D.D.C. Sept. 7, 2023) ...... 5

*Nakajima v. Gen. Motors Corp.*, 857 F. Supp. 100 (D.D.C. 1994) ............................................. 20

*Nat'l Parks Conservation Ass'n v. U.S. Forest Serv.*, No. 15-1582, 2015 WL 9269401 (D.D.C. 2015) ........................................................................................................................................... 9

*Neuberger Berman Real Est. Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398 (D. Md. 2005) .................................................................................................................................... 16

*Rattner v. Netburn*, No. 88-cv-2080, 1989 WL 223059 (S.D.N.Y. June 20, 1989) .................... 14

*Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598 (D.C. Cir. 2001) ............................ 25

*S.E.C. v. Lavin*, 111 F.3d 921 (D.C. Cir. 1997) ........................................................................... 10

*United States ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d 183 (D.D.C. 2014) ............. 13, 18

*United States v. Deloitte LLP*, 610 F.3d 129 (D.C. Cir. 2010) ................................................ 23, 25

*United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980) ............................................................. 4

*United States v. ISS Marine Services, Inc.*, 905 F. Supp. 2d 121 (D.D.C. 2012) ........................ 23

*United States v. Legal Servs. for N.Y.C.*, 249 F.3d 1077 (D.C. Cir. 2001)............................. 13, 18

*United States v. Nixon*, 418 U.S. 683 (1974) ............................................................................... 10

*United States v. Philip Morris Inc.*, 22 F.R.D. 421 (D.D.C. 2002) ............................................. 10

*United States v. Singhal*, 800 F. Supp. 2d 12 (D.D.C. 2011)................................................... 10, 14

*United States v. United Shoe Mach. Corp.*, 89 F. Supp. 357 (D. Mass. 1950)............................ 10

*US Airline Pilots Ass'n v. Pension Ben. Guar. Corp.*, 274 F.R.D. 28 (D.D.C. 2011)............ 19, 21

*Vanda Pharms., Inc. v. Food & Drug Admin.*, 539 F. Supp. 3d 44 (D.D.C. 2021)........................ 7

**Other Authorities**

Edward J. Imwinkelried, THE NEW WIGMORE: EVIDENTIARY PRIVILEGES (2014)................ 13, 18

**Rules**

D.C. R. Prof. Conduct 1.6(a) ........................................................................................................ 25

Fed. R. Civ. P. 26(b)(3)................................................................................................................. 22

Fed. R. Evid. 502(a)...................................................................................................................... 19

## INTRODUCTION

Plaintiff Heather McPhee brought this case to shed light on the malfeasance of certain bad actors within the National Football League Players Association ("NFLPA" or the "Union"), including the individually-named defendants Lloyd Howell, Matthew Curtin, and Thomas DePaso. These men placed their own financial interests and their desire to avoid exposure of their professional failings as labor organization executives above the best interests of the player-members of the Union. The defendants, including the NFLPA, thus all share the same motivations for attempting to silence and discredit Ms. McPhee: None of them want the Union's player-members to understand how certain senior individuals engaged in misconduct and violated their fiduciary duties with respect to their union's majority ownership in OneTeam Partners ("OTP")— a $2 billion asset—and how the NFLPA harmed union member's interests by agreeing with the NFL to conceal an arbitration decision finding that the NFL encouraged teams to collude to restrain players' wages.

In its Motion to Seal Portions of the Complaint ("Motion"), the NFLPA has doubled-down on Howell's, Curtin's, and DePaso's efforts to keep the public—including, most importantly, the Union's members—in the dark about serious ongoing issues within the organization. Ms. McPhee's Complaint seeks transparency and accountability; the NFLPA's Motion advocates precisely the opposite.

Ms. McPhee's Complaint ("Compl.") has not jeopardized the interests of the player-members, as the NFLPA claims. *See* NFLPA Memorandum of Points and Authorities in Support of the Motion ("Memo") at 4. On the contrary, if the pending Department of Justice ("DOJ") investigation uncovers wrongdoing, corrective measures will be to the benefit of the player-members, not their detriment. And if the Union is hiding behind tenuous privilege claims in the DOJ investigation, *see* Memo at 4, that is further evidence of its overarching goal to keep player-

members uninformed and prioritize the financial and reputational interests of non-player leaders above those of the union members themselves.

Predictably, the NFLPA's Motion continues the Union's pattern of deflecting attention from the substance of the issues Ms. McPhee has raised by attacking her character and falsely claiming that she is motivated by self-interest. No reasonably objective factfinder would read Ms. McPhee's Complaint and conclude, as the NFLPA does, that she was "single-mindedly pursu[ing] a course of action that placed her personal interests above those of her client." Memo at 1. Her only "personal interest" was a desire for staff and player-leaders to understand their fiduciary and labor law duties to the thousands of young union members and their massive assets. Ms. McPhee had nothing whatsoever to gain by raising the alarm about the grants of units from OTP's Senior Executive Incentive Plan ("SEIP") to the unions for the OTP Board representatives or about the NFLPA's concealment of the collusion decision. She did not stand to receive any promotion, bonus, or any other benefit by doing so. On the contrary, she made things harder for herself by drawing the ire of those in power, including Howell, Curtin, and DePaso. But she refused to be dissuaded from acting in the best interests of the Union's members.

The NFLPA's Memo also reveals facts that were never previously shared with McPhee or her counsel,[1] which further illustrate the pretextual and retaliatory nature of its investigation of Ms. McPhee that ultimately resulted in her wrongful termination.[2] The Memo reveals that the

---

[1] Ms. McPhee received the Notice of Termination on December 30, 2025, mere hours before the NFLPA filed its Motion.

[2] Ms. McPhee strenuously denies the NFLPA investigation's factual findings. *See* Memo at 2-3 & Declaration of Tom DePaso ("DePaso Declaration"). The so-called "independent" investigation was conducted by a law firm selected by the very individuals whose misconduct and failings are at issue in the DOJ investigation, and it reflects the culmination of their plan to demonize Ms. McPhee and paper up pretextual reasons for her termination. Ms. McPhee intends to amend her Complaint to address developments and additional facts that have arisen since she filed her Complaint on December 18, 2025.

NFLPA's investigation of Ms. McPhee began even closer in time to her DOJ Investigation Disclosure on May 30, 2025, than Ms. McPhee had previously been aware. *See* Memo at 2. The NFLPA represents that its investigation began on July 7, 2025— more than a month before it placed Ms. McPhee on paid administrative leave, but just days after DePaso had scapegoated Ms. McPhee and wrongfully accused her of leaking the collusion decision. Compl. ¶ 136. Moreover, Ms. McPhee was never given notice that alleged leaks were the subject of the NFLPA's investigation, despite numerous inquiries from both Ms. McPhee and her counsel. *See* Compl. ¶¶ 164–69, 180–191. Yet even after a one-sided and biased investigation spanning more than five months, the NFLPA tacitly admits it has no evidence that Ms. McPhee leaked any confidential information to the media. The Union claims that Ms. McPhee forwarded materials to her personal email account "that later appeared in the press," but stops short of alleging that Ms. McPhee shared those materials with anyone else. *See* Memo at 3. If the NFLPA had any evidence that Ms. McPhee leaked confidential information to the media, it surely would have said so. No such evidence exists.

As discussed further below, the NFLPA's Motion should be denied. The overly broad, categorical approach in the Motion is improper and fails to distinguish between the portions of the Complaint that the NFLPA contends are attorney-client privileged from those that it contends are work product or confidential. Both the attorney-client privilege and work product protection are narrow exceptions to the general rule of openness and transparency in judicial proceedings, each of which has distinct elements that must be established by the proponent of the privilege or protection by competent evidence. The NFLPA has failed to meet that burden. Moreover, information over which the NFLPA has waived attorney-client privilege and work product protection should not be sealed. Finally, the allegations in the Complaint do not violate Ms. McPhee's duty of confidentiality to the NFLPA because she has not revealed privileged

information; OTP is not her client; and the NFLPA has failed to demonstrate how the disclosure of any purported confidences or secrets in the Complaint would be embarrassing or detrimental to the Union.

## **ARGUMENT**

### I.    THE *HUBBARD* FACTORS WEIGH AGAINST SEALING

Public access to judicial records is "fundamental to a democratic state." *United States v. Hubbard*, 650 F.2d 293, 315 (D.C. Cir. 1980) (internal quotation omitted). There is a "strong presumption in favor of public access to judicial proceedings." *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1277 (D.C. Cir. 1991). This presumption is "the starting point in considering a motion to seal court records." *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996).

The factors to consider when deciding a motion to seal are:

> (1) the need for public access to the documents at issue; (2) the extent to which the public had access to the documents prior to the sealing order; (3) the fact that a party has objected to disclosure and the identity of that party; (4) the strength of the property and privacy interests involved; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced.

*Johnson*, 951 F.2d at 1277 (citing *Hubbard*, 650 F.2d at 317–22).

The first factor weighs against sealing. As a general matter, "[t]he public's access to civil cases involving private disputes is intended to serve as a check on the judiciary: because judicial proceedings are by default public, litigants can be confident that they will be treated fairly and justly." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 92 (D.D.C. 2014). There is significant public interest in this case, as evidenced by the widespread news coverage.[3] This public interest, and

---

[3] *See, e.g.,* Don Van Natta Jr., *NFLPA lawyer Heather McPhee sues union for alleged retaliation*, ESPN (Dec. 18, 2025), https://www.espn.com/nfl/story/_/id/47348281/attorney-says-nflpa-leaders-punished-exposing-alleged-wrongdoing; Mike Florio, *NFLPA counsel Heather*

access, is necessary and important. The NFLPA has persistently worked to keep the public—including, most importantly, the Union's members—in the dark about serious ongoing issues within the organization. Sadly, public coverage about problems at the NFLPA was the only way that thousands of young union members learned about issues that Ms. McPhee had been trying to address internally. The NFLPA's Motion is yet another attempt to conceal those issues.

Ms. McPhee seeks transparency and accountability for the NFLPA's egregious actions toward its own union members. Redacting forty-four paragraphs of the Complaint would unnecessarily withhold information from the public, including the thousands of NFL players directly impacted by the issues presented.[4] It appears the NFLPA will not send unredacted court filings to its union members unless the Court orders it to do so.

Furthermore, if the Court grants the NFLPA's proposed redactions "it would effectively be committing itself to adjudicate the entire case at least partially under seal." *Guttenberg*, 26 F. Supp. 3d at 93 (in denying motion to seal portion of complaint, court explained downstream consequences of sealing to include litigating the motion to dismiss, litigating the motion for summary judgment, and taking trial testimony under seal). That would "substantially impede[]"

---

*McPhee sues the union*, NBC SPORTS (Dec. 18, 2025), https://www.nbcsports.com/nfl/profootballtalk/rumor-mill/news/nflpa-counsel-heather-mcphee-sues-the-union; Matt Moret, *NFLPA lawyer sues union leaders, alleging retaliation for helping FBI*, THE ATHLETIC (Dec. 19, 2025), https://www.nytimes.com/athletic/6901927/2025/12/19/nflpa-heather-mcphee-lawsuit-retaliation-fbi-investigation/.

[4] The NFLPA cites to *Monbo* for its claim that seeking partial, "targeted" redactions weigh in favor of sealing. But what the NFLPA seeks here is a far cry from *Monbo*. In *Monbo*, the plaintiff sought to partially seal only exhibits to her complaint. And, even with the redactions, "the public w[ould] still be able to access the information the redacted exhibits are cited for in Monbo's Complaint." *Monbo v. United States*, No. CV 23-2425 (JEB), 2023 WL 7129866, at *1 (D.D.C. Sept. 7, 2023). The NFLPA, by contrast, seeks to seal forty-four paragraphs of Ms. McPhee's complaint and to make that information wholly inaccessible to the public.

"public access," *id.*, and would only contribute to the NFLPA's campaign to keep the public in the dark.

The second factor is neutral because some of the information that the NFLPA seeks to seal was previously available to the public and other information was not. For example, information about the collusion arbitration decision[5] and about the senior NFLPA male employee accused ███ ████████████████████████████████████████,[6] had previously been reported. Other information has not been previously available to the public or shared with union members, which is precisely why Ms. McPhee has come forward.

The third factor weighs in favor of sealing because the defendant NFLPA has objected to disclosure.

The fourth factor weighs against sealing. To assess the strength of the privacy interests involved, the NFLPA "must identify specific privacy interests in the documents at issue." *Guttenberg*, 26 F. Supp. 3d at 94. First, as explained further in § II below, the NFLPA has lumped paragraphs together instead of delineating specific alleged privileges or confidences; similarly, the NFLPA hasn't described specific privacy interests in its proposed redactions. Second, as explained in detail *infra*, the portions the NFLPA seeks to seal do not reveal privileged or protected information nor do they reveal confidential information that merits sealing.

The fifth factor also weighs against sealing. The NFLPA claims that "some of the information" in the Complaint "relates to highly consequential pending antitrust litigation, as well

---

[5] *See* Don Van Natta Jr. & Kalyn Kahler, *Sources: NFLPA, NFL agreed to keep collusion findings secret*, ESPN (July 9, 2025), https://www.espn.com/nfl/story/_/id/45703132/nflpa-nfl-agreed-keep-collusion-findings-secret.

[6] *See* Lauren Kaori Gurley, et al., *NFL Players' Union Investigating Claims of Misconduct Made Against Senior Official*, VICE (Mar. 3, 2022), https://www.vice.com/en/article/nfl-players-union-investigating-claims-of-misconduct-made-against-senior-official/.

as a significant arbitration decision." Memo at 10.[7] However, the NFLPA has not explained how any portions of the Complaint could prejudice it in pending antitrust litigation, beyond a mere conclusory allegation. Nor has the NFLPA specified which information it is relying on. Furthermore, as to the NFLPA's claim that it would be prejudiced in the Department of Justice investigation, Memo at 10, the NFLPA does not explain *how* it would be prejudiced. *See Guttenberg*, 26 F. Supp. 3d at 95 ("speculative and generalized arguments" are insufficient). The NFLPA states that it "has asserted privilege over this confidential information" without stating what "confidential information" it is referring to. Memo at 10. To take just one example, surely information about how the NFLPA treated Ms. McPhee differently from two senior male NFLPA employees is beyond the remit of the DOJ's investigation and any related assertions of privilege. *See* Compl. ¶¶ 192–93; 222.

The sixth factor weighs against sealing. In assessing "the purposes for which the documents were introduced," *Hubbard*, 650 F.2d at 321, "[t]he interest in disclosure is especially strong for documents relevant 'to the central claims of the litigation.'" *Vanda Pharms., Inc. v. Food & Drug Admin.*, 539 F. Supp. 3d 44, 57 (D.D.C. 2021) (citing *Guttenberg*, 26 F. Supp. 3d at 96). The NFLPA seeks to seal information that is central to Ms. McPhee's claims including elements of her claim that the defendants obstructed justice by conspiring to intimidate her from testifying before the DOJ and grand jury investigations (*see, e.g.*, Compl. ¶¶ 94; 97–104); her claim that the defendants discriminated against her because she is a woman (*see, e.g., id.* ¶¶ 192–93; 222); and her claim that the defendants intentionally inflicted emotional distress on her (*see, e.g., id.* ¶¶ 7, 144).

---

[7] Notably, in its Memo, the NFLPA specifically identifies two "highly consequential pending antitrust lawsuits" that Ms. McPhee did not mention in the Complaint. Memo at 4, 10.

In summary, sealing is not appropriate here where factors one, four, five, and six weigh against sealing, factor two is neutral, and only factor three weighs in favor of sealing. *See Nat'l Children's Ctr.*, 98 F.3d at 1410 (holding lower court's sealing order in error where "only one *Hubbard* factor counsels in favor of sealing the consent decree—the fact that the [movant] has objected to disclosure.").

## II.    THE NFLPA DOES NOT ARTICULATE THE SPECIFIC BASIS ON WHICH IT MOVES TO SEAL EACH PORTION OF THE COMPLAINT

The NFLPA broadly asserts that portions of Ms. McPhee's Complaint "contain privileged or confidential information." Memo at 15. But the NFLPA does not distinguish among portions of the Complaint that it claims are privileged or protected from those that it claims are confidential. *See, e.g.*, Memo at 19 (asserting multiple paragraphs "implicate attorney-client privileged, work product protected, and confidential information"). The NFLPA also fails to identify the specific basis for any asserted privilege, including whether it is relying on the attorney-client communication privilege or the work product protection. *See, e.g.*, Memo at 16 (asserting seven distinct paragraphs "fall squarely within the scope of the attorney-client privilege and work-product protections" without further descriptions); *id.* at 20 (asserting thirty-two paragraphs are "protected by the attorney-client or work product privilege"). And the NFLPA does not describe the specific basis for its claims that portions of the Complaint are confidential, including whether it is relying on confidentiality related to Rule 1.6, confidentiality related to Ms. McPhee's Employment Agreement, or some other type of confidentiality. *See, e.g.*, *id.* at 20 (stating, without further specification, that "[a]t a minimum, even if not protected by the attorney-client or work-product privilege, the allegations include highly sensitive, confidential material that Plaintiff was not authorized to divulge under the ethical rules or her Employment Agreement").

The NFLPA organizes its Memo around four topic areas—(i) Ms. McPhee's "evaluation and communication of legal risks," (ii) Ms. McPhee's "opinion about the SEIP investigation," (iii) Ms. McPhee's "allegations about the Collusion Arbitration," and (iv) Ms. McPhee's "allegations about two internal personnel investigation." Memo at 15. Those are not categories that identify what, precisely, is the basis for sealing any portion of the Complaint.

Further obscuring the basis for its Motion, the NFLPA never distinguishes between information within a single paragraph within the Complaint, which are frequently multiple sentences long. There could be, for example, a portion of a paragraph the NFLPA claims is work product and another portion of that paragraph that it claims is confidential as defined in Ms. McPhee's Employment Agreement. Ms. McPhee cannot be made to guess what arguments the NFLPA is making.[8] *See Nat'l Parks Conservation Ass'n v. U.S. Forest Serv.*, No. 15-1582, 2015 WL 9269401, at *3 (D.D.C. 2015) ("Litigation is [] not a shell game, in which a movant is permitted to make general assertions in a motion, leaving its opponent to guess at its grounds, only then to supply content in a reply brief.").

Accordingly, Ms. McPhee responds to the Motion by first explaining that nothing in the Complaint is protected by attorney-client privilege or by work product protection. She then explains that she has not violated her duty of confidentiality because much of the material subject to the Motion are neither confidences nor secrets of the NFLPA.

---

[8] The NFLPA also apparently seeks to seal two headers in Ms. McPhee's complaint. *See* Sealed Appendix at 20 (header II.D.); *id.* at 24 (header II.E.). Those headers are highlighted in the Sealed Appendix as portions that it seeks to seal, yet those headers are not addressed in the Motion. Ms. McPhee therefore does not specifically address the headers in this Opposition as the NFLPA has not identified a basis to seal them.

### III.    THE COMPLAINT DOES NOT REVEAL ANY PRIVILEGED ATTORNEY-CLIENT COMMUNICATIONS.

Attorney-client privilege operates as a narrow exception to the general rule of openness and transparency in judicial proceedings "because of its adverse effects on the full disclosure of truth." *United States v. Philip Morris Inc.*, 22 F.R.D. 421, 424 (D.D.C. 2002) (citing *S.E.C. v. Lavin*, 111 F.3d 921, 929 (D.C. Cir. 1997)). "The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence." *United States v. Nixon*, 418 U.S. 683, 709 (1974). In balancing the presumption of openness and transparency in judicial proceedings with attorney-client privilege, courts have held that "[a]ttorney-client privilege must be 'strictly confined within the narrowest possible limits consistent with the logic of its principle.'" *In re Sealed Case*, 676 F.2d 793, 807 n.44 (D.C. Cir. 1982) (quoting *In re Grand Jury Investigation (Sun. Co.)*, 599 F.2d 1224, 1235 (3d Cir. 1979)). "Thus, where there are close calls, the Court will put a thumb on the scales in favor of narrow construction of the elements of the privilege." *United States v. Singhal*, 800 F. Supp. 2d 12, 16 (D.D.C. 2011).

As defined by the D.C. Circuit, attorney-client privilege applies only if each of the following essential elements of attorney-client privilege are met:

> (1) the asserted holder of the privilege is or sought to become a client;
> (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer;
> (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and
> (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984) (quoting *United States v. United Shoe Mach. Corp.*, 89 F. Supp. 357, 358–59 (D. Mass. 1950)). "[T]he privilege covers communications,

and not all acts undertaken on behalf of a client . . . ." *Dist. Title v. Warren*, 265 F. Supp. 3d 17, 23 (D.D.C. 2017).

"It is well established that the proponent of a privilege bears the burden of demonstrating facts sufficient to establish the privilege's applicability." *In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740, 750 (D.C. Cir. 2006). "Therefore, 'a blanket assertion of the attorney-client privilege will not suffice. Rather, the proponent must conclusively prove each element of the privilege.'" *Dist. Title*, 265 F. Supp. 3d at 23 (quoting *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998)) (cleaned up).

The NFLPA's assertions of attorney-client privilege fail for several reasons. First, the NFLPA has not provided any competent evidence to support its claims of privilege, which alone is dispositive. In addition, the NFLPA attempts to improperly assert attorney-client privilege over alleged facts in the Complaint that are not communications, are communications with third parties, and/or rely upon only non-privileged information. Finally, sealing is inappropriate where the attorney-client privilege has been waived.

### A.    The NFLPA Failed to Provide Competent Evidence to Assert Attorney-Client Privilege.

To carry its burden of establishing that the attorney-client privilege applies, "the party asserting the privilege must 'present the underlying facts demonstrating the existence of the privilege,' and 'conclusively prove each element of the privilege.'" *Mannina v. Dist. of Columbia*, No. 1:15-cv-931, 2019 WL 1993780, at *2 (D.D.C. May 6, 2019) (quoting *In re Lindsey*, 158 F.3d at 1270). In doing so, the proponent "must adduce competent evidence in support of 'each of the essential elements necessary to support a claim of privilege.'" *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 153 (D.D.C. 2012) (quoting *Alexander v. Fed. Bureau of Investigation*, 192 F.R.D. 42, 45 (D.D.C. 2000)). This evidence "must offer more than just

conclusory statements, generalized assertions, and unsworn averments of its counsel." *Id.* (quoting *In re Veiga*, 746 F. Supp. 2d 27, 34 (D.D.C. 2010)). "Where the proponent fails to adduce sufficient facts to permit the district court to conclude with reasonable certainty that the privilege applies, its burden has not been met." *Id.* (citing *F.T.C. v. TRW, Inc.*, 628 F.2d 207, 213 (D.C. Cir. 1980)).

Typically, competent evidence is presented in the form of a declaration or affidavit supporting the proponent's claim of privilege. *See, e.g., In re Domestic Airline Travel Antitrust Litig.*, Misc. No. 15-1404, 2020 WL 3496748, at *3 (D.D.C. Feb. 25, 2020), *report & recommendation adopted* 2020 WL 3496448 (D.D.C. May 11, 2020) ("One example of competent evidence would be declarations addressing specific documents and explaining why a particular privilege applies to that document(s)."). These declarations or affidavits must offer more than just general and conclusory statements. *Alexander*, 192 F.R.D. at 45. Unsworn assertions by counsel are not considered competent evidence. *Domestic Air Travel*, 2020 WL 3496748, at *2; *Jud. Watch, Inc.*, 841 F. Supp. 2d at 154 n.6 ("The Court does not credit the unsworn averment of DHS's counsel.").

Here, the NFLPA offers no competent evidence. The DePaso Declaration offers little in the way of evidence supporting the NFLPA's invocation of attorney-client privilege and does not address the essential elements of attorney-client privilege for each paragraph that NFLPA seeks to seal.[9] Mr. DePaso does not identify any specific paragraph in the Complaint as containing privileged communications. The unsworn assertions of counsel in the Motion cannot be considered

---

[9] The only relevant fact related to privilege that the DePaso Declaration contains is that there is overlap between what has been asserted in the Complaint and the information over which NFLPA has invoked attorney-client privilege as part of the Department of Justice investigation into the NFLPA and OTP. The remainder of the DePaso Declaration attempts to rebut allegations in the Complaint, which is not appropriate or relevant to the motion at issue. Without more supporting its claims of attorney-client privilege, the DePaso Declaration falls well short of meeting the NFLPA's burden of providing sufficient evidence to support the essential elements of privilege.

competent evidence supporting a privilege finding. However, even if they were to be considered, the categorical approach to claims of privilege that the Motion takes, without asserting any facts addressing the essential elements of attorney-client privilege, further proves that the NFLPA has provided insufficient justification for any claim of privilege. *See In re Veiga*, 746 F. Supp. 2d at 33 (holding that a proponent may not "assert blanket or categorical claims of privilege; rather, the law 'requires a showing that the privilege applies to each communication for which it is asserted'") (quoting *United States v. Legal Servs. for N.Y.C.*, 249 F.3d 1077, 1082 (D.C. Cir. 2001)).

Accordingly, the Court need look no further—the failure to provide any competent evidence concerning the communications and information it seeks to seal defeats any claim for attorney-client privilege. However, NFLPA's privilege assertions also fail for the additional reasons below.

### B. Attorney-Client Privilege Is Limited to Communications Between an Attorney and Client for the Purpose of Seeking or Receiving Legal Advice.

Attorney-client privilege protects "only communications, not the facts stated in the communication, facts learned by virtue of the relationship; the fact that something was omitted in a communication; the fact that there was a communication; the time of, date of, or participation in the communication; the fact that [a] layperson has retained a professional, such as an attorney; or the general nature or topic of the communication such as a 'tax' or 'criminal' matter." *United States ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d 183, 190 n.16 (D.D.C. 2014) (quoting Edward J. Imwinkelried, THE NEW WIGMORE: EVIDENTIARY PRIVILEGES § 6.7.1 (2014)). The NFLPA has tried to stretch the attorney-client privilege to cover several categories of information in the Complaint to which it plainly does not apply.

### 1.    Communications unrelated to legal advice are not privileged.

"[N]ot all communications between a lawyer and client are privileged. For example, if an attorney gives advice of a non-legal nature or otherwise acts as a business partner rather than as a lawyer, her communications are not subject to the privilege." *United States v. Singhal*, 800 F. Supp. 2d at 15 (citing *Boca Investerings P'Ship v. United States*, 31 F. Supp. 2d 9, 11–12 (D.D.C. 1998)). Conversations between Ms. McPhee and NFLPA employees are therefore privileged only if they relate to legal advice. *See id.*

When Howell told Ms. McPhee ██████████████████████████████████████ ████████████████████████████████████████████████████, Compl. ¶ 98, that was not privileged. Neither was Howell's statement to Ms. McPhee ███████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ *Id.* ¶¶ 99– 103.

Similarly, when Ms. McPhee was instructed ████████████████, *id.* ¶ 94, and ██████, *id.* ¶ 104, ████████████████████████, those instructions were not for the purpose of securing legal advice. *See Rattner v. Netburn*, No. 88-cv-2080, 1989 WL 223059, at *26 (S.D.N.Y. June 20, 1989) ("A client's instruction to an attorney to take an action is not privileged."). When Howell "████████████████████████████████████████████ ███████████████," Compl. ¶ 104, he was not seeking legal advice from her. The NFLPA cannot hide ███████████████████████████████████████████████████████████

behind a shield of privilege.

### 2. Communications that do not rely on information obtained from the NFLPA are not privileged.

"Where the communications at issue were made by attorneys, rather than by clients, those communications are privileged only if they 'rest on information obtained from a client.'" *Cobell v. Norton*, 226 F.R.D. 67, 88 (D.D.C. 2005) (quoting *In re Sealed Case*, 737 F.2d at 99 ). "The privilege does not protect any attorney's opinion or advice, but only 'the secrecy of the underlying facts' obtained from the client." *Id.* (quoting *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 254 (D.C. Cir. 1977)). "[T]he proponent of the privilege must [ ] show with 'reasonable certainty that the lawyer's communication rested in significant and inseparable part on the client's confidential disclosure.'" *Id.* (quoting *In re Sealed Case*, 737 F.2d at 99).

When Ms. McPhee sought to "explain" to the NFLPA ███████████████████ ███████████████████████████████ Compl. ¶ 8, she was not relying on privileged information. Nor was she relying on privileged information when she ███████████ ███████████████████████████████ *Id.* ¶ 77.

Instead, Ms. McPhee's communications relied on information about the OTP's SEIP received from non-privileged sources, including directly from OTP.[10] *See* Declaration of Heather McPhee ("Decl.") ¶¶ 9–12; *see, e.g.*, Compl. ¶¶ 76,[11] 77, 92. Ms. McPhee's client was the NFLPA—not OTP. Decl. ¶ 6; *see Estate of Jones ex rel. Gay v. Beverly Health and Rehab. Servs.,*

---

[10] While Ms. McPhee affirms that the material on which these communications were based came from non-privileged sources, it remains the NFLPA's burden to show with reasonable certainty that Ms. McPhee's communications rested in significant and inseparable part on the NFLPA's confidential disclosures to Ms. McPhee. *See Cobell*, 226 F.R.D. at 88. It has not and cannot do so.

[11] The NFLPA seeks to redact footnote 4 to paragraph 76. Yet the NFLPA does not mention this footnote in its Memo. There is no basis for—and no reason suggested by the NFLPA—why a non-privileged statement that is not a communication should be sealed on the basis of any privilege or confidentiality.

*Inc.*, 68 F. Supp. 2d 1304, 1309 (N.D. Fla. 1999) ("Generally, an attorney is not presumed to also represent an organization such as a corporate parent or subsidiary solely by virtue of having represented the client."). Any communications between McPhee and the NFLPA that "rest on" non-privileged information—including information received from OTP or communications reflecting information obtained from OTP—are not privileged.

Other communications that do not rely on privileged information from the NFLPA are also not privileged, including, for example, Linklaters telling outside counsel that █████████ ███████████████████████████████████████████████████████████ Compl. ¶ 106.

### 3.    The attorney-client privilege only applies to communications.

Attorney-client privilege covers communications between an attorney and client, not mental impressions of the attorney. *See Neuberger Berman Real Est. Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 423 (D. Md. 2005) ("A mental impression on its own is not a cognizable communication within the purview of the attorney-client privilege.").

Ms. McPhee's "mental impressions" are not privileged as attorney-client communications, despite the NFLPA's claims otherwise. *See* NFLPA Memo at 16. Ms. McPhee's opinions or mental impressions involve no communication with the NFLPA. Furthermore, the mental impressions contained in the Complaint do not reveal privileged information. Ms. McPhee had concerns about the SEIP based on non-privileged information, including information that came from OTP. *See* Decl. ¶¶ 9–12; *see, e.g.*, Compl. ¶¶ 5, 74–77. The assertion that ████████████████████ ██████████████████████████████████████ *id.* ¶ 62 (emphasis in original), which is based on non-privileged information, is not privileged.

A vast majority of the paragraphs in the Complaint that the NFLPA places in its "Plaintiff's opinion about the SEIP investigation" category and the "Plaintiff's allegations about the Collusion Arbitration" category, Memo at 15, are opinions—not communications—and are not based on

privileged information; they are, therefore, not attorney-client privileged. *See, e.g.*, Compl. ¶ 79 (Ms. McPhee's belief based on non-privileged information, including information reported in the media); *id.* ¶ 83 (describing reports from non-client "OTP personnel" and Ms. McPhee's "view," based on non-privileged information); *id.* ¶ 84 (describing Ms. McPhee's opinion in response to non-privileged complaints ██████████████████████████████████████ ████████████████████████████); *id.* ¶ 85 (describing Ms. McPhee's opinion based on ████████████████████████████████████████████████████████); *id.* ¶ 88 (noting Ms. McPhee's opinion and "frustrat[ion]" based on non-privileged information); *id.* ¶ 89 (describing Ms. McPhee's "strong disagree[ment]" based on information not privileged due to third-party waiver); *id.* ¶ 93 (non-privileged opinion); *id.* ¶ 95 (referring to Ms. McPhee as "stunned" and to Ms. McPhee's opinion based on non-privileged information from OTP); *id.* ¶ 97 (referencing Ms. McPhee's "concerns" that arose from her review of non-privileged information); *id.* ¶ 101 (describing Ms. McPhee as "alarmed" based on non-privileged information); *id.* ¶ 114 (describing what Ms. McPhee "presumed" and that she was "surprised" based on non-privileged information); *id.* ¶ 143 (opinion based on review of non-privileged documents).

Similarly, there is no attorney-client privilege over statements that do not contain any communications. The NFLPA points to three paragraphs in particular—85, 89, and 90—and claims that "these types of disclosures" "fall squarely within the cloak of the attorney-client privilege." Memo at 18. But none of those paragraphs contain any communications, let alone any privileged information. Paragraph 85 discusses actions taken by Ms. McPhee including "independently studying" and "identifying," not a communication. Paragraph 89 discusses a report and Ms. McPhee's opinion about its conclusions, not a communication. And paragraph 90 discusses an action taken by DePaso and a perception of him, not a communication. Other

arguments by the NFLPA that certain paragraphs are protected by the attorney-client privilege are similarly defective. *See, e.g.*, Compl. ¶ 105 (actions not taken by the NFLPA or OTP are not communications), *id.* ¶ 112 (stating that ████████████████████████████ is not a communication), *id.* ¶ 120 (DePaso's ████████████████████████████ ████████████████████████ is not a communication).

### 4.    The existence and facts of communications are not privileged.

The attorney-client privilege applies to the substance of a communication that otherwise meets the elements described *supra.* However, the fact that a communication occurred and the facts related to it, such as when it occurred and who participated, are not privileged. *Halliburton Co.*, 74 F. Supp. 3d at 190 n.16 (quoting Imwinkelried § 6.7.1). Furthermore, high-level summaries of the communications, similar to what is typically included in privilege logs, are not privileged either. *See Legal Servs. of N.Y.C.*, 249 F.3d at 1081 ("Courts have consistently held that the general subject matters of clients' representations are not privileged.").

In the Complaint, Ms. McPhee describes certain documents and meetings by referencing only non-privileged information about them. *See, e.g.,* Compl. ¶ 81 (identifying participants in a meeting); *id.* ¶ 89 (identifying date draft Linklaters report was sent and who received it); *id.* ¶ 92 (identifying rough date of meeting and participants in meeting); *id.* ¶ 97 (same); *id.* ¶ 107(same); *id.* ¶ 163 (identifying parties to and high-level summary of an email).

### C.    Third-Party Communications Waive Privilege.

Attorney-client privilege "does not cover communications that the attorney had with third parties." *Dist. Title*, 265 F. Supp. 3d at 23. "Furthermore, any voluntary disclosure by the client to a third party breaches the confidentiality of the attorney-client relationship and therefore waives the privilege, not only as to the specific communication disclosed but often as to all other communications relating to the same subject matter." *In re Sealed Case*, 676 F.2d at 809. More

18

specifically, waiver resulting from the disclosure of protected information extends to undisclosed protected material if "(1) the waiver is intentional; (2) the disclosed and undisclosed communications and information concern the same subject matter; and (3) they ought in fairness to be considered together." *US Airline Pilots Ass'n v. Pension Ben. Guar. Corp.*, 274 F.R.D. 28, 31 (D.D.C. 2011) (quoting Fed. R. Evid. 502(a)).

There are at least four unique instances of waiver—both by counsel for the NFLPA and by the NFLPA—that apply to information in Ms. McPhee's Complaint: (1) Linklaters waived privilege over the existence of its investigation into the SEIP by disclosing it to OTP; (2) DePaso waived privilege over the Linklaters investigation ██████████ when he discussed them with counsel for OTP; (3) Howell waived privilege over the Linklaters investigation ████ ██████ when he discussed them with Sansiveri, and when Howell and Sansiveri discussed the investigation with the NFLPA Executive Committee members; and (4) NFLPA's arbitration litigation counsel waived privilege and/or work product protection ████████████ ██████████ when he discussed ████████ with a third party lawyer who did not represent the NFLPA.

First, Linklaters waived privilege when it told the OTP Board—a third party—████ ████████████████████████.[12] *See* Compl. ¶¶ 80, 82; Decl. ¶ 18. Therefore, the existence of the Linklaters investigation and the subject matter of the investigation is no longer privileged.[13] *See In re Sealed Case*, 676 F.2d at 809.

---

[12] At no point in the Memo does the NFLPA assert any privilege relationship with OTP.

[13] In its publicly filed Memo, Dkt. 16, the NFLPA disclosed that "the Linklaters investigation [] was initiated for the purpose of obtaining legal advice about the conduct of NFLPA Board members and the SEIP." That is another, independent waiver of privilege over the existence of the Linklaters investigation.

Second, DePaso waived privilege ███████████ of the Linklaters investigation when he discussed it with counsel for OTP—a third party. When Ms. McPhee ████████████

████████████████████████████████████████████████

████████████████████████████████████████

█████████████████████ Compl. ¶ 100; Decl. ¶ 22. DePaso discussed ████████████

███████████████████████, with third-party OTP, thereby waiving privilege, including

over █████████████████████. [14] This "alarmed" Ms. McPhee █████████████████

████████████████████████████████████████

████████████████████ Compl. ¶ 101; Decl. ¶ 23. There is no basis for asserting that an allegation of the waiver of privilege is, itself, privileged.

Third, Howell waived privilege over the Linklaters investigation ████████████ when he and Sansiveri—an OTP employee— discussed the investigation with EC members, telling them

████████████████████████████████████████████████

████████████████████████████ Compl. ¶ 113; Decl. ¶¶ 24–25. Howell waived privilege over ████████████████████████ when he shared it with Sansiveri. *In re Sealed Case*, 676 F.2d at 809; *see, e.g.,* Compl. ¶¶ 80, 82, 84, 85, 88–90, 100 (any potential privilege over the information in these paragraphs about the Linklaters investigation/███████████ has been waived).

Fourth, the NFLPA's outside counsel waived privileged over █████████████ with former NFLPA Executive Director DeMaurice Smith, Compl. ¶ 144; Decl. ¶¶ 31–32. *Nakajima v. Gen. Motors Corp.*, 857 F. Supp. 100, 104 (D.D.C. 1994) (noting that attorney-client privilege does not protect communications made with former employees). By disclosing to Mr. Smith

---

[14] The DePaso Declaration does not deny that this conversation with OTP's counsel occurred.

████████████████████████████████████████████████████

█████████████ *id.* ¶ 144, outside counsel waived privilege over those issues. *See In re Sealed Case*, 676 F.2d at 809.

Based on the NFLPA's course of conduct, it has waived privilege over any protected information and communications related to the Linklaters investigation under Fed. R. Evid. 502(a). First, three of the instances of waiver described above were all deliberate disclosures regarding the Linklaters investigation to third parties, and the NFLPA knew exactly what it was disclosing in these communications. *See US Airline Pilots Ass'n*, 274 F.R.D. at 31 (noting that courts have interpreted Rule 502(a)(1)'s intentional-waiver language to "presume that a deliberate disclosure constitutes an intentional waiver, at least absent credible evidence that the disclosing party was unaware of the contents of the disclosed material"). Second, those three disclosures relate directly to the Linklaters investigation, including its existence and conclusions. Third, fairness considerations dictate that the entirety of all communications and information related to the Linklaters investigation should be considered together, as the waiver by the NFLPA should not be limited to only what the NFLPA wanted others to know about the investigation. *See Hughes v. Abell*, No. 09-0220, 2012 WL 13054819, at *5 (D.D.C. Mar. 7, 2012) ("The Court concludes that, 'in fairness' to all parties and consistent with Rule 502, the entirety of the communications should 'be considered together,' 'in order to prevent a selective and misleading presentation' of this highly relevant evidence.").

The same goes for the failure to disclose the arbitration decision to the NFLPA members, which was the subject of the fourth waiver. First, in discussing with a former employee about the issues Ms. McPhee raised about the failure to reveal the arbitration decision to the Union's members, NFLPA's counsel deliberately disclosed information related to the decision to withhold

the arbitration decision. Second, that disclosure directly relates to the decision to withhold the arbitration decision. Third, in fairness to the parties, allowing the NFLPA to waive privilege but only to a discussion that described Ms. McPhee as "overzealous" and her concerns as "frivolous" would allow for a selective and misleading presentation of the evidence. *See id.* Therefore, the NFLPA has waived privilege over all communications and information related to the decision to withhold the arbitration decision from its player-members.

## IV.    THE COMPLAINT DOES NOT CONTAIN WORK-PRODUCT PROTECTED MATERIALS.

The Federal Rules of Civil Procedure protect from discovery documents and tangible things, as well as mental impressions of counsel, that are prepared in anticipation of litigation or for trial by and for another party or its representative. *See Banneker Ventures, LLC v. Graham*, 253 F. Supp. 3d 64, 69 (D.D.C. 2017) (citing Fed. R. Civ. P. 26(b)(3)). The party invoking work-product protection has the burden of proving that the document or impression qualifies as work product. *Id.* at 70. Similar to attorney-client privilege, the party invoking work product protection bears the burden of proving, by competent evidence and to a reasonable certainty, each of the essential elements necessary to support application of the protection. *English v. Wash. Metro. Area Transit Auth.*, 323 F.R.D. 1, 15 (D.D.C. 2017) (quoting *In re Veiga*, 746 F. Supp. 2d at 41).

The NFLPA fails to meet that burden, as it has not provided any competent evidence to assert work-product protection. In addition, the NFLPA has not demonstrated that any document or mental impression was prepared in anticipation of litigation. Finally, the NFLPA waived any potential work-product protection over Ms. McPhee's analysis of the collusion decision.

### A.    NFLPA Failed to Provide Competent Evidence to Assert Work-Product Protection.

Much like the NFLPA's insufficient claim for attorney-client privilege, *see supra* Section III.A, the NFLPA similarly fails to provide any competent evidence showing that any of the

allegations in the Complaint should be protected under the work-product doctrine. The DePaso Declaration fails to address any of the elements required to prove work-product protection. And even if this Court were to consider the assertions of counsel, which should not be considered competent evidence, those assertions are bare and conclusory. Therefore, the failure to provide any competent evidence concerning Ms. McPhee's mental impressions defeats any claim for work-product protection.

**B.** **There Was No Anticipation of Litigation When Ms. McPhee Formed the Impressions Described in the Complaint.**

"Past mental impressions are protected only to the extent that they were formed in anticipation of then-imminent litigation." *Minebea Co. v. Papst*, 355 F. Supp. 2d 526, 529 (D.D.C. 2005). Courts will look to "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010). For an impression to be prepared in anticipation of litigation, "the lawyer must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable." *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998).

Internal investigations into possible wrongdoing present a murky area as it relates to whether items or impressions are created in anticipation of litigation. *See United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 135 (D.D.C. 2012) ("In this Circuit, it is still somewhat unclear how specifically a party must anticipate litigation in order to invoke the work-product doctrine in the context of a corporate internal investigation."). This makes it especially crucial that the proponent claiming work-product protection provide facts related to the internal investigation, which will allow the court to determine whether there was a subjective belief that litigation was a real possibility and whether that belief was reasonable.

23

The NFLPA's Memo provides no factual basis for the Court to evaluate the subjective or objective basis for the anticipation of litigation, which is fatal to all of its work-product claims. Indeed, the Complaint as a whole reflects that neither Ms. McPhee ███████████ subjectively anticipated imminent litigation concerning the SEIP grants.

The Complaint recounts Ms. McPhee's efforts, beginning in or around November 2024, to understand the Written Consent to grant SEIP units to the unions in order to compensate OTP Board members, Compl. ¶ 74, ████████████████████████████ ████████████████ *Id.* ¶ 79. Ms. McPhee was completely focused on making internal changes at NFLPA, or amending/revoking the Written Consent *without* the need for litigation. *See* Decl. ¶ 16. At no time did she anticipate that the SEIP grants would result in litigation between NFLPA or anyone else, let alone that any such litigation was "imminent." *See Minebea Co. v. Papst*, 355 F. Supp. 2d at 529.

None of Ms. McPhee's mental impressions reflected in the Complaint constitute work product because they were not formed in anticipation of reasonably imminent litigation. Many of the impressions reflected in the paragraphs the NFLPA seeks to seal were formed before the Union retained Linklaters to investigate OTP issues; litigation was neither subjectively nor objectively anticipated at that time. *See, e.g.*, Compl. ¶¶ 5, 62, 69, 74–77, 79. McPhee formed other impressions during or in the immediate aftermath of the Linklaters investigation. *See, e.g.*, *id.* ¶¶ 81–85, 88–89, 92–99, 104. Neither Ms. McPhee nor the NFLPA anticipated litigation during that period, either. *See* Decl. ¶ 26. On the contrary, the Complaint reflects that ████████████ ████ Sansiveri were dismissive of Ms. McPhee's concerns and thought she was "making a big deal out of nothing." Compl. ¶¶ 83–84, 86. It was not until mid-May 2025 that the DOJ contacted Ms. McPhee and notified her that they were investigating the conduct of certain NFLPA/NFLPI

executives relating to OTP. *Id.* ¶ 108. Yet the NFLPA has provided no factual basis for the Court to evaluate whether this development created either a subjective or objective basis for the anticipation of litigation, nor has it identified which passages in the Complaint it contends are Ms. McPhee's mental impressions formed in anticipation of litigation with DOJ.

### C.    The NFLPA Waived Any Work Product Protection for Ms. McPhee's Mental Impressions About the Collusion Decision.

"[D]isclosing work product to a third party can waive protection if 'such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary.'" *Deloitte*, 610 F.3d at 140 (quoting *Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 605 (D.C. Cir. 2001)). The NFPLA has moved to seal two paragraphs that reflect Ms. McPhee's mental impressions about the NFLPA's concealment of the collusion arbitration decision. Compl. ¶¶ 143–44. However, any work product protection that may have applied was waived when the NFLPA's outside counsel disclosed those impressions to a third party. *Id.* ¶ 144; Decl. ¶¶ 31–32. That third party was not a current employee of NFLPA, and although he is a lawyer, he did not represent NFLPA at the time of this conversation.

## V.    THE ALLEGATIONS IN THE COMPLAINT DO NOT VIOLATE MS. MCPHEE'S DUTY OF CONFIDENTIALITY.

Rule 1.6 prohibits the disclosures of a client's confidences or secrets. D.C. R. Prof. Conduct 1.6(a). A "confidence" is information protected by the attorney-client privilege under applicable law. *Id.* 1.6(b). As addressed in Sections III–IV *supra*, the NFLPA has failed to carry its burden of establishing that any allegation in the Complaint is privileged.

Under the Rule, a "secret" is defined as information, "the disclosure of which would be embarrassing" or "detrimental" to the client. *Id.* Importantly a "'[s]ecret' generally does not refer to legal knowledge or legal research . . . or to information that is generally known in the local community or in the trade, field, or profession to which the information relates." *Id.* Furthermore,

information that is unrelated, or even tangentially related, to the rendering of legal advice should not be sealed as a confidence or secret. *See Hoffman v. Balt. Police Dep't*, 379 F. Supp. 2d 778, 784 (D. Md. 2005) ("Many of Plaintiff's allegations are tangentially related, at best, to any confidential attorney-client conversations, *e.g.*, Plaintiff's claims about the frequent relocation of his office or disproportionate case assignments.").

Much like its attorney-client privilege and work product arguments, the NFLPA fails to clearly assert confidentiality as a justification for sealing. For example, the NFLPA fails to address confidentiality as a justification for sealing the allegations in the Complaint related to Ms. McPhee's "evaluation and communications of legal risk" (pertaining to Compl. ¶¶ 5, 8, 74–77, and 163 addressed in Section II.B.1 of the Memo) and OTP's SEIP (pertaining to Compl. ¶¶ 62, 69, 79, 81–82, 85, 88–90 addressed in the first half of Section II.B.2 of the Memo). And for the remaining paragraphs, the NFLPA fails to provide any evidence demonstrating how the allegation is a confidence or secret, including how it is embarrassing or detrimental to the NFLPA.

Also, as detailed above, employees at the NFLPA regularly discussed details regarding the Linklaters investigation and arbitration decision with individuals outside of the investigation. This conduct by the NFLPA is not consistent with maintaining confidentiality of that information.

Moreover, contrary to the NFLPA's assertions, much of what it seeks to seal is OTP's information that Ms. McPhee learned through disclosures from OTP. As noted above, Ms. McPhee does not represent OTP, and therefore she owes no duty of confidence to it. In addition to the waiver concerns that exist due to OTP's sharing of information regarding the SEIP with Ms. McPhee, the allegations concerning actions taken by OTP and Mr. Sansiveri while employed by OTP are plainly not a secret or confidence of the NFLPA. Any potential embarrassment or detriment would be to OTP, not the NFLPA.

Lastly, information that senior male NFLPA employees were treated differently than Ms. McPhee should not be sealed. These allegations are critical to Ms. McPhee's claim against the defendants that they discriminated against her because of her sex. *See Haider v. Geller & Co. LLC*, 457 F. Supp. 3d 424, 429 n.2 (S.D.N.Y. 2020) ("Furthermore, allowing an ethical rule to shield an employer's discriminatory behavior from public view would run afoul of the public's interest in deterring workplace discrimination on the basis of [sex] and enforcing legal and social normals."). The Complaint relies on public reporting about "a senior male NFLPA employee" who was "investigated for 'a wide-ranging set of allegations'" including being ███████████ ███████████ Compl. ¶ 193 (citing *Gurley, supra*); *see also id.* ¶ 222. This information is generally known in the local community and profession, as it has been broadly reported. And again, the NFLPA has not provided any additional context to indicate that the allegations included in these paragraphs contain secrets that are embarrassing or detrimental to the NFLPA.

## CONCLUSION

For all of the foregoing reasons, and those that may be made during oral argument at any hearing on this matter, the Court should deny the NFLPA's Motion to Seal Portions of the Complaint and decline to issue a protective order.

Dated: January 20, 2026                    Respectfully submitted,

                                           */s/ Courtney R. Forrest*
                                           Courtney R. Forrest (D.C. Bar No. 996740)
                                           Sarah R. Fink (D.C. Bar No. 166663)
                                           Kaiser PLLC
                                           1099 14th Street, NW, 8th Floor West
                                           Washington, D.C. 20005
                                           Tel: (202) 640-2850
                                           cforrest@kaiserlaw.com
                                           sfink@kaiserlaw.com

                                           *Attorneys for Plaintiff Heather McPhee*

**CERTIFICATE OF SERVICE**

I certify that on January 20, 2026, a copy of the foregoing was filed with the Clerk of Court using the Court's CM/ECF system, which will send a copy to all counsel of record that have entered an appearance in this matter.

I further certify that on January 20, 2026, a copy of the foregoing was mailed by first-class U.S. Mail, postage prepaid, and properly addressed to the following:

Matthew Curtin
88 N. Main Street
Yardley, Pennsylvania 19067

William R. Martin
Counsel for Lloyd Howell
Marino Finley LLP
818 Connecticut Avenue NW, Suite 801
Washington, DC 20006

/s/ Courtney R. Forrest
Courtney R. Forrest (D.C. Bar No. 996740)
Sarah R. Fink (D.C. Bar No. 166663)
Kaiser PLLC
1099 14th Street, NW, 8th Floor West
Washington, D.C. 20005
Tel: (202) 640-2850
cforrest@kaiserlaw.com
sfink@kaiserlaw.com

*Attorneys for Plaintiff Heather McPhee*

28