UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

------------------------------------------------------------- x
                             :

HEATHER MCPHEE,                   :

              Plaintiff,           :

                             :     Case No.

        vs.                      :     1:25-cv-04409 (AHA)

                             :

NATIONAL FOOTBALL LEAGUE PLAYERS    :
ASSOCIATION, MATTHEW CURTIN, THOMAS    :
DEPASO, and LLOYD HOWELL,         :

              Defendants.       :

                             :

------------------------------------------------------------- x

## REDACTED REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION'S MOTION TO SEAL PORTIONS OF PLAINTIFF'S COMPLAINT

Jacob Karabell (D.C. Bar No. 996066)    Susan Davis*
BREDHOFF & KAISER PLLC            Evan R. Hudson-Plush*
805 15th Street, NW, Suite 1000         Daniel M. Nesbitt*
Washington, DC 20005               Kayla Morin* (D.C. Bar. No. 90007996)
jkarabell@bredhoff.com            COHEN, WEISS and SIMON LLP
                             909 Third Avenue, 12th Floor
                             New York, New York 10022
                             Tel: (212) 563-4100
                             sdavis@cwsny.com
                             ehudsonplush@cwsny.com
                             dnesbitt@cwsny.com
                             kmorin@cwsny.com

                             *admitted *pro hac vice*

*Attorneys For Defendants*
*National Football League Players Association and Tom DePaso*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

I.   THE *HUBBARD* FACTORS DECISIVELY SUPPORT SEALING DISCRETE
     PARAGRAPHS (OR PORTIONS THEREOF) IN THE COMPLAINT ........................... 3

II.  THE NFLPA HAS DEMONSTRATED THAT THE COMPLAINT CONTAINS
     CONFIDENTIAL, WORK-PRODUCT PRIVILEGED, AND ATTORNEY-
     CLIENT PRIVILEGED INFORMATION ........................................................................ 7

     A.   The Complaint Contains Confidential Information ................................................. 7

     B.   The Complaint Contains Work Product and Attorney-Client Privileged
          Information ........................................................................................................... 11

          i.    Allegations in the Complaint Are Privileged on Their Face ..................... 11

          ii.   The Complaint Contains Attorney Work-Product that Was
                Prepared in Anticipation of Litigation ...................................................... 13

          iii.  The Complaint Contains Attorney-Client Privileged Information ........... 16

                1.   Plaintiff's Communications Related to Legal Advice .................. 16

                2.   Plaintiff's Communications Relied on Confidential
                     Information from the NFLPA ....................................................... 17

                3.   Plaintiff's Allegations Reveal Privileged Communications ......... 20

                4.   "Facts" in the Complaint Reveal Privileged Information ............. 22

     C.   The NFLPA Did Not Waive Attorney-Client or Work-Product Privilege ........... 22

CONCLUSION.................................................................................................................. 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*[Redacted text] v. Consumer Fin. Prot. Bureau*,
  No. CV 15-1177(RDM), 2015 WL 6317031 (D.D.C. Oct. 16, 2015) ....................................... 6

*Alexander v. F.B.I.*,
  192 F.R.D. 42 (D.D.C. 2000) ........................................................................................... 12, 22

*Animal Welfare Inst., v. Feld Ent., Inc.*,
  No. CV 03-2006, 2014 WL 12775090 (D.D.C. Jan. 23, 2014) ................................................ 24

*Bakios v. Michaels Stores*,
  No. 3:23-CV-01274-K, 2024 WL 812020, at *8 (N.D. Tex. Feb. 27, 2024) ......................... 12

*Ball v. Exec. Off. for United States Att'ys*,
  No. CV 21-1949, 2024 WL 4024494 (D.D.C. Sept. 3, 2024) .................................................. 13

*Banks v. Off. of Senate Sergeant-At-Arms*,
  228 F.R.D. 24 (D.D.C. 2005) .................................................................................................... 21

*Brown Rudnick LLP v. Doe*,
  No. 25-CV-853 (JEB), 2025 WL 1287046 (D.D.C. Apr. 9, 2025) ............................................ 5

*Cobell v. Norton*,
  226 F.R.D. 67 (D.D.C. 2005) .................................................................................................... 18

*Davenport v. Djourabchi*,
  No. CV1602445ABJRMM, 2020 WL 7042813 (D.D.C. Nov. 30, 2020) ......................... 17, 22

*Dir., Off. of Thrift Supervision v. Vinson & Elkins, LLP*,
  124 F.3d 1304 (D.C. Cir. 1997) ............................................................................................... 13

*In re Domestic Airline Travel Antitrust Litig.*,
  No. MC 15-1404 (CKK), 2020 WL 3496748 (D.D.C. Feb. 25, 2020) .................................... 12

*Feld v. Fireman's Fund Ins. Co.*,
  300 F.R.D. 9 (D.D.C. 2014) ...................................................................................................... 12

*Feld v. Fireman's Fund Ins. Co.*,
  991 F. Supp. 2d 242 (D.D.C. 2013) .......................................................................................... 25

*In re FirstEnergy Corp.*,
  154 F.4th 431 (6th Cir. 2025) ................................................................................................... 23

*In re Fluor Intercontinental, Inc.*,
    803 F. App'x 697 (4th Cir. 2020) ........................................................23

*In re Gonzalez*,
    773 A.2d, 1026, 1030 (D.C. 2001) ......................................................10

*Guttenberg v. Emery*,
    26 F. Supp. 3d 88 (D.D.C. 2014) ..........................................................3

*Gwin v. Nat'l Marine Eng'rs Beneficial Ass'n*,
    966 F. Supp. 4 (D.D.C. 1997), *aff'd*, 159 F.3d 636 (D.C. Cir. 1998) .......................4

*Haider v. Geller & Co. LLC*,
    457 F. Supp. 3d 424 (S.D.N.Y. 2020) ...................................................8

*Harling v. Ado Staffing, Inc.*,
    No. 3:13-CV-1113-J-34JRK, 2014 WL 12621226 (M.D. Fla. Jan. 23, 2014) .......12

*Hughes v. Abell*,
    No. CV 09-0220 (JDB), 2012 WL 13054819 (D.D.C. Mar. 7, 2012) .............24

*Jett v. Cnty. of Maricopa*,
    No. CV-19-02735-PHX-DLR, 2019 WL 6310252 (D. Ariz. Nov. 25, 2019) .......12

*Jones v. Carson*,
    No. CV 15-310, 2018 WL 11410070 (D.D.C. Mar. 30, 2018)..................18, 19

*Jud. Watch, Inc. v. U.S. Dep't of Treasury*,
    802 F. Supp. 2d 185 (D.D.C. 2011) ...................................................18, 19

*In re Keeper of Recs. (Grand Jury Subpoena Addressed to XYZ Corp.)*,
    348 F.3d 16 (1st Cir. 2003) ................................................................24

*In re Kellogg Brown & Root, Inc.*,
    796 F.3d 137 (D.C. Cir. 2015) ........................................................23, 24

*League of Women Voters of the United States v. Frid*,
    No. 23-5058, 2024 WL 1739205 (D.C. Cir. Apr. 23, 2024)....................4, 6

*Monbo v. United States*,
    No. CV 23-2425 (JEB), 2023 WL 7129866 (D.D.C. Sept. 7, 2023) ............5

*Nesse v. Pittman*,
    206 F.R.D. 325 (D.D.C. 2002)..........................................................21

*In re Paul*,
    292 A.3d 779 (D.C. 2023) ................................................................9

*Peraton Sols. Inc. v. Mil. Bowl Found., Inc.*,
    No. CV 23-1052 (JEB), 2023 WL 3751119 (D.D.C. Apr. 17, 2023) ......................................6

*In re Sealed Case*,
    146 F.3d 881 (D.C. Cir. 1998) ...........................................................................................13

*In re Sealed Case*,
    237 F.3d 657 (D.C. Cir. 2001) ............................................................................................7

*In re Sealed Case*,
    676 F.2d 793 (D.C. Cir. 1982) ..........................................................................................24

*In re Sealed Case*,
    737 F.2d 94 (D.C. Cir. 1984) ......................................................................................17, 19

*In re Sealed Case*,
    877 F.2d 976 (D.C. Cir. 1989) ............................................................................................3

*Slaughter v. McDonough*,
    No. CV 18-1318 (RBW), 2022 WL 2817836 (D.D.C. July 19, 2022) ............................11, 12

*Syron v. Fed. Hous. Fin. Agency*,
    No. 114MC359JEBJMF, 2014 WL 12623047 (D.D.C. Dec. 31, 2014) ..............................13

*Touarsi v. United States Dep't of Just.*,
    78 F. Supp. 3d 332 (D.D.C. 2015) ...............................................................................12, 17

*True the Vote, Inc. v. IRS*,
    No. CV 13-734 (RBW), 2024 WL 2803332 (D.D.C. May 31, 2024) ..................................5, 6

*U.S. Airline Pilots Ass'n v. Pension Ben. Guar. Corp.*,
    274 F.R.D. 28 (D.D.C. 2011) .........................................................................................14, 24

*United States v. Am. Tel. & Tel. Co.*,
    642 F.2d 1285 (D.C. Cir. 1980) ........................................................................................25

*United States v. Deloitte LLP*,
    610 F.3d 129 (D.C. Cir. 2010) ......................................................................................14, 25

*United States v. Hubbard*,
    650 F.2d 293 (D.C. Cir. 1980) ................................................................................. *passim*

*United States v. Lichtenstein*,
    769 F. Supp. 3d 32 (D.D.C. 2025) ......................................................................................5

*United States v. Naegele*,
    468 F. Supp. 2d 165 (D.D.C. 2007) ...................................................................................21

*United States v. Philip Morris USA, Inc.*,
   No. 99-CV-2496 (GK), 2004 WL 7372141 (D.D.C. June 29, 2004) ....................................19

*United States v. Straker*,
   258 F. Supp. 3d 151 (D.D.C. 2017) .........................................................................................6

*United States v. White*,
   887 F.2d 267 (D.C. Cir. 1989) ................................................................................................23

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981) ..................................................................................................................2

*Vasquez v. Whole Foods Mkt., Inc.*,
   No. 16-CV-2483 (APM), 2021 WL 11432979 (D.D.C. Nov. 29, 2021) ................................24

*In re von Bulow*,
   828 F.2d 94 (2d Cir. 1987) .....................................................................................................24

*W. Trails, Inc. v. Camp Coast to Coast, Inc.*,
   139 F.R.D. 4 (D.D.C. 1991) ...................................................................................................21

## Other Authorities

D.C. Rule of Prof'l Conduct 1.6 .......................................................................................1, 5, 7–10

D.C. Rule Prof'l Conduct 1.13 ......................................................................................................3

Fed. R. Civ. P. 26 .........................................................................................................................11

Fed. R. Evid. 502 .........................................................................................................................24

D.C. Bar Ethics Op. No. 363,
   *In-House Lawyer's Disclosure or Use of Employer/Client's Confidences or
   Secrets in Claim Against Employer/Client for Employment Discrimination or
   Retaliatory Discharge* (2012), https://dcbar.org/for-lawyers/legal-
   ethics/ethics-opinions-210-present/ethics-opinion-363 .......................................................1, 8

Defendant National Football League Players Association ("NFLPA" or the "Union") respectfully submits this reply memorandum of points and authorities in further support of its Motion to Seal Portions of Plaintiff's Complaint (the "Motion"), Docket No. 16.

## **INTRODUCTION**

For many years, Plaintiff, one of the Union's top lawyers, had virtually unfettered access to its most highly confidential and privileged information. Not only did she disclose significant confidential and privileged information to individuals outside the Union without the NFLPA's knowledge or consent, but she included this information in her public Complaint. The Union now seeks to seal a limited number of paragraphs (and parts of paragraphs) of the Complaint that reveal attorney-client privileged, work-product privileged, and/or confidential information.

Where, as here, an in-house attorney sues their client, the D.C. ethics rules recognize that such litigation directly implicates the attorney's duty of confidentiality to their client. In an Ethics Opinion[1] addressing this precise scenario, the D.C. Bar held that a lawyer may not "knowingly reveal, or use to the lawyer's advantage or the client's disadvantage," any "confidence or secret" of the client in the "lawyer's offensive lawsuit against that client." D.C. Bar Ethics Op. No. 363 ("Ethics Op. 363"). While a "confidence" generally refers to privileged information, a "secret" is much broader and includes any "other information gained in the professional relationship that the client has requested be held inviolate" *or* disclosure of which "would be likely to be detrimental" to the client. D.C. Rule of Prof'l Conduct 1.6(b). As the

---

[1] D.C. Bar Ethics Op. No. 363, *In-House Lawyer's Disclosure or Use of Employer/Client's Confidences or Secrets in Claim Against Employer/Client for Employment Discrimination or Retaliatory Discharge* (2012), https://dcbar.org/for-lawyers/legal-ethics/ethics-opinions-210-present/ethics-opinion-363.

NFLPA demonstrated in its opening brief, Plaintiff's Complaint is replete with the confidences and secrets of her client, the NFLPA.

Nonetheless, the Union has not sought to strike these improper disclosures, nor has it moved to seal the entire Complaint. Instead, it only seeks a narrowly tailored sealing order that shields select paragraphs (or portions of paragraphs) in the Complaint. It has done so in large part to ensure that it has not waived the privilege in this and other litigation, as well as in an ongoing Department of Justice investigation.

In response, Plaintiff advances an unduly narrow and unsupported view of what constitutes attorney-client privileged, work-product privileged, and confidential information. This view is fundamentally at odds with the purpose of these doctrines, which are designed to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). If Plaintiff's view were adopted, it would significantly chill the ability of the NFLPA's (and other unions') elected leaders and staff to freely communicate with their in-house attorneys concerning legal compliance, bargaining strategy, and other confidential matters.

As discussed in detail in the NFLPA's opening brief ("Def. Br."), Docket No. 16, and in Part I below, the factors set forth in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), tip decisively in favor of sealing a narrowly targeted subset of Plaintiff's allegations. The NFLPA seeks to seal only 44 (out of 243) paragraphs (or portions of paragraphs) in the Complaint that contain, often on their face, information that is (as we explain in Part II) attorney-client privileged, work-product privileged, and/or confidential. Because these protections overlap, many allegations in the Complaint are shielded on multiple grounds. For ease of

reference, the NFLPA has submitted a privilege log that identifies which protections apply to each paragraph (or portion of a paragraph) in the Complaint. *See* Supp. Decl. of Tom DePaso, dated February 3, 2026 ("Supp. DePaso Decl.") Ex. A.

For the reasons discussed below and in the NFLPA's opening brief, the NFLPA respectfully requests that the Court grant the Motion and issue a protective order prohibiting Plaintiff from disclosing privileged or confidential information in the public filings in this case.

## ARGUMENT

### I.   THE *HUBBARD* FACTORS DECISIVELY SUPPORT SEALING DISCRETE PARAGRAPHS (OR PORTIONS THEREOF) IN THE COMPLAINT

As set forth in the NFLPA's opening brief, the six factors outlined in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980) favor sealing the designated portions of the Complaint. *See* Def. Br. at 9–11.

Plaintiff's primary argument concerning the first factor, the need for public access, is that the Complaint should remain public in the interest of transparency and accountability to the NFLPA's members.[2]  But Plaintiff did not have the right to disregard her ethical obligations to her client, the NFLPA, because she felt that the Union's entire membership should have certain information.  Indeed, it is well-established that a union lawyer's client is the Union itself, acting through its elected leadership, not individual members. *E.g.*, D.C. Rule Prof'l Conduct 1.13 & cmt. 2 (in-house lawyer represents the organization, not its constituents);

---

[2] Plaintiff relies heavily on *Guttenberg v. Emery*, 26 F. Supp. 3d 88 (D.D.C. 2014) to support her argument that the Complaint should remain available to the public.  In *Guttenberg*, however, the court considered the *plaintiffs'* motion to seal paragraphs about allegedly disparaging comments that the *plaintiffs* had inserted in their own complaint.  *Id*. at 92–93.  The court noted that if the motion to seal were granted, it "would protect precious few additional details, hardly justifying the harm to the public's interest."  *Id*. at 94.  Here, in contrast, the NFLPA seeks to protect its own "crown jewels"—information shielded by the attorney-client privilege that Plaintiff injected into a public filing.  *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989).

*Gwin v. Nat'l Marine Eng'rs Beneficial Ass'n*, 966 F. Supp. 4, 7–8 (D.D.C. 1997), *aff'd*, 159

F.3d 636 (D.C. Cir. 1998) (union's lawyer represents the union, not its members) (citing

*Peterson v. Kennedy*, 771 F.2d 1244, 1258 (9th Cir. 1985) and *Montplaisir v. Leighton*, 875 F.2d

1, 6 (1st Cir. 1989)).  Here, Plaintiff did not allege, nor could she, that *anyone* withheld

information from the Special Committee of Player Representatives that was established by the

Board of Player Representatives for the precise purpose of making decisions and directing

outside counsel with respect to the DOJ investigation.  *See infra* n.7 & Supp. DePaso Decl. ¶ 21.

Courts have routinely held that the public's interest in access to court filings does

not override a client's paramount interest in safeguarding the integrity of its privileged and

confidential information.  *See* Def. Br. at 6–8 (citing cases); *see also League of Women Voters of

the United States v. Frid*, No. 23-5058, 2024 WL 1739205, at *1, 3 (D.C. Cir. Apr. 23, 2024)

(where materials "potentially implicate[d]" the attorney-client and work-product privileges, the

"strong privacy interests" in those materials overcame presumption of public access).

Notably, here, the NFLPA seeks to seal only 44 paragraphs (or portions of

paragraphs) in the Complaint.  The remaining 199 paragraphs more than adequately reveal

Plaintiff's concerns to the public.  *See, e.g.*, Compl. ¶¶ 9–25 (not seeking to seal allegations

regarding Plaintiff's communications with the DOJ and the NFLPA's alleged response, the

NFLPA's alleged failure to appeal an arbitration decision [the "Collusion Decision"], and the

investigation into Plaintiff's conduct); ¶¶ 43–61, 63–68, 70–73 (allegations describing One Team

Partners ["OTP"] and the Senior Executive Incentive Plan ["SEIP"]); ¶¶ 126–42 (allegations

regarding the Collusion Decision); ¶¶ 145–62, 164–91 (allegations about alleged retaliation against Plaintiff).[3]

The *Hubbard* test's third, fourth, and fifth factors are "interrelated," and require courts to evaluate the "strength of the property and privacy interests involved, and to take into account whether anyone has objected to public disclosure and the possibility of prejudice to that person." *United States v. Lichtenstein*, 769 F. Supp. 3d 32, 39 (D.D.C. 2025). Plaintiff agrees that the third factor weighs in favor of sealing, but claims that the fourth and fifth do not, primarily because the NFLPA has not shown that the information it seeks to seal is privileged and confidential.[4] As discussed *infra*, the NFLPA has demonstrated the presence of attorney-client privileged, work-product privileged, and confidential information in the Complaint, which is a well-established basis for sealing. *See* Def. Br. at 6–8.

Furthermore, even if the Court determines that some of the information the NFLPA seeks to seal is not privileged, Plaintiff's allegations implicate highly sensitive and confidential material ("secrets" under D.C. Professional Rule of Conduct 1.6) that were disclosed in violation of both her professional obligations and her Confidentiality Agreement. These factors weigh heavily in favor of sealing. *See Brown Rudnick LLP v. Doe*, No. 25-CV-853 (JEB), 2025 WL 1287046, at *2–3 (D.D.C. Apr. 9, 2025); *True the Vote, Inc. v. IRS*, No. CV 13-

---

[3] For that reason, the sixth factor—the purposes for which the documents were introduced—is neutral because the majority of the information needed to adjudicate Plaintiff's claims will remain publicly available. *See Monbo v. United States*, No. CV 23-2425 (JEB), 2023 WL 7129866, at *2 (D.D.C. Sept. 7, 2023).

[4] Of note, however, she does not argue that privileged and confidential information should not be sealed—only that the NFLPA has not demonstrated that allegations in the Complaint are privileged or confidential.

734 (RBW), 2024 WL 2803332, at *9 (D.D.C. May 31, 2024); *Peraton Sols. Inc. v. Mil. Bowl Found., Inc.*, No. CV 23-1052 (JEB), 2023 WL 3751119, at *2 (D.D.C. Apr. 17, 2023).

   As to the fifth factor, the *possibility* (not certainty) of prejudice to the party opposing disclosure, Plaintiff argues that the NFLPA has not explained *how* her disclosures will prejudice it.  But it is self-evident that the disclosure of privileged information will harm the NFLPA because it will chill the ability of elected player leaders and staff to communicate confidential information to the Union's in-house counsel out of fear that such communications will become public fodder whenever an attorney decides to disclose it.  *See Frid*, 2024 WL 1739205, at *2 ("high possibility of prejudice" where the "revelation of [] internal communications could chill discussions . . . between officials and their counsel").  Moreover, it is obvious that Plaintiff's allegations about the Union's ███████████████████ could harm the NFLPA during a pending DOJ investigation and tarnish the Union's reputation in the eyes of the public, its members, and the National Football League.  *Cf. United States v. Straker*, 258 F. Supp. 3d 151, 158 (D.D.C. 2017) (noting that "the misuse of privileged communications could result in prejudice to petitioners in a future proceeding"); *[Redacted text] v. Consumer Fin. Prot. Bureau*, No. CV 15-1177(RDM), 2015 WL 6317031, at *4 (D.D.C. Oct. 16, 2015) ("commonsense" that "disclosure of the fact that an entity is subject to investigation by federal authorities would inflict non-trivial reputational, and possibly associated financial, harm on that entity").

   *Hubbard* itself outlined situations in which unsealing documents would "implicate cognizable interests" if the documents "contained material protected by the attorney-client privilege." *True the Vote*, 2024 WL 2803332, at *9; *see Hubbard*, 650 F.2d at 323–24. The overriding strength of the NFLPA's interest in maintaining the sanctity of its privileged and

confidential material throughout the Complaint, combined with the prejudice this could cause to

the Union, easily tip the *Hubbard* scales in favor of sealing the limited portions of the Complaint

the Union identified.  *See In re Sealed Case*, 237 F.3d 657, 666 (D.C. Cir. 2001) (even one

"extraordinarily" strong interest can outweigh the other five *Hubbard* factors).

## II.    THE NFLPA HAS DEMONSTRATED THAT THE COMPLAINT CONTAINS CONFIDENTIAL, WORK-PRODUCT PRIVILEGED, AND ATTORNEY-CLIENT PRIVILEGED INFORMATION

We explain below how the Plaintiff's Complaint contains allegations that include

confidential, work-product privileged, and attorney-client privileged information, and why those

privileges have not been waived.

### A.    The Complaint Contains Confidential Information

Under Rule 1.6 of the D.C. Rules of Professional Conduct, a lawyer shall not

"reveal a confidence or secret of the lawyer's client."  D.C. Rule Prof'l Conduct 1.6(a)(1).  A

"confidence," which we address in Section B below, refers to attorney-client privileged

information.  A "secret," however, "refers to other information gained in the professional

relationship [i] that the client has requested be held inviolate, *or* [ii] the disclosure of which

would be embarrassing, *or* [iii] would be *likely* to be detrimental, to the client."  *Id.* 1.6(b)

(emphasis added).  Plaintiff argues that she did not reveal any "secrets" because the NFLPA has

not shown that the information was "embarrassing or detrimental," that employees at the NFLPA

discussed some information with individuals outside the organization, and that she learned

certain relevant information from OTP,[5] not the NFLPA.  *See* Plaintiff's Opposition to the

NFLPA's Motion to Seal ("Pl. Br."), Docket No. 32-1 at 25–27.  Her arguments fail.

---

[5] Notably, the NFLPA is the largest (44%) owner of OTP and holds four out of nine Board seats there.  Compl. ¶¶ 48–50.  OTP thus can hardly be considered an unrelated third party. Indeed, it provided certain documents and information to the National Football League Players

As we previously demonstrated, Plaintiff was obligated to keep the privileged and confidential information she learned as in-house counsel strictly confidential, and was not authorized to disclose it outside the organization. Decl. of Tom DePaso, dated December 30, 2025 ("DePaso Decl."), Docket No. 16-2 ¶¶ 3–6. Indeed, her Confidentiality Agreement, which survives termination of her employment, states that she "recognize[s] and agree[s]" that she "cannot and will not copy, transmit, download or otherwise convey *any information*" she obtains "as a result of [her] relationship with NFLPA to any person or entity to whom or to which [she has] not been authorized to provide such information." Supp. DePaso Decl. ¶ 24 Ex. B. Plaintiff only learned the information she disclosed in the Complaint as a result of her serving as one of the NFLPA's top lawyers. *Id.* ¶ 22. The information sought to be redacted are thus "secrets" under the Rule *regardless* of whether their release could be "detrimental" to the NFLPA, and for that reason alone must be sealed.[6]

In any event, even if Plaintiff could credibly claim that the Union did not seek to hold the allegations in the designated paragraphs "inviolate," which she cannot, the information also constitutes a "secret" if it would "likely" be detrimental to the NFLPA. D.C. Rule Prof'l

---

Inc. ("NFLPI") counsel, which Plaintiff analyzed, precisely because of the relationship between the two organizations. Supp. DePaso Decl. ¶¶ 5–7.

[6] Plaintiff's reliance on *Haider v. Geller & Co. LLC* [Pl. Br. at 27] for the proposition that her allegations regarding confidential personnel investigations should not be sealed is misplaced. 457 F. Supp. 3d 424 (S.D.N.Y. 2020). In *Haider*, the court relied on the ABA's Model Rules of Professional Conduct, which allow a lawyer to reveal or use confidential information "to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client." *Id.* at 429 n.2. The D.C. Rules of Professional Conduct, however, omit this exception. Ethics Op. 363 (Rule 1.6 "does not authorize *offensive* use of client confidences or secrets by the lawyer in the context of a lawyer-client controversy"). Plaintiff only learned about these investigations (Compl. ¶¶ 192–193, 222) in the course of serving as the Union's counsel, and the NFLPA never authorized her to disclose any information about them. Supp. DePaso Decl. ¶¶ 22, 26; DePaso Decl. ¶ 3.

Conduct 1.6(b).  This clearly is the case here, as Plaintiff explicitly describes the NFLPA's conduct that she claims could ███████████████████████████, *see* Compl. ¶¶ 1–2, 5, 25, 62, 65, 75–76, 85, ████████████████████████████████████████ ███████████████████████ *Id*. ¶¶ 69, 76, 95.  As to the latter, Plaintiff made these disclosures in the midst of a DOJ investigation (¶¶ 108–110), where the Union has taken the position that much of the information revealed in the Complaint is privileged and thus protected from disclosure to the DOJ (DePaso Decl. ¶ 7).[7]  This readily meets the "likely to be detrimental" standard in the Rule.  *See In re Paul*, 292 A.3d 779, 787 (D.C. 2023) (sharing information that attorney "alleged illustrated [his client's] criminal and civil liability" is "certainly" detrimental under Rule 1.6).

Equally meritless are Plaintiff's arguments that she has a right to share confidential information with third parties because other employees at the NFLPA allegedly did, and that she can disclose information she learned from OTP because OTP was not her client.  *See* Pl. Br. at 26.  Plaintiff was the NFLPA's attorney, the information she learned, including the documents she reviewed, came through confidential communications with Sophie Gage,[8] the Vice President, Commercial Strategy & Legal, at the NFLPA's wholly-owned subsidiary

---

[7] Plaintiff's claim that the Union is "hiding" behind the privilege claims with respect to the DOJ investigation is flatly wrong.  Pl. Br. at 1.  In addition to retaining independent outside counsel to assist in connection with the investigation, the Union established and appointed a Special Committee comprised of elected Player Representatives to address all issues that arose with respect to the investigation.  Supp. DePaso Decl. ¶ 21.  Counsel has interviewed fact witnesses and will provide appropriate information to the DOJ.  *Id.*  Plaintiff is *not* a fact witness to the underlying events involving the SEIP.  Rather, she was provided confidential information concerning those events and used the information to provide the NFLPA with her legal analysis.  But that legal analysis is privileged and it is up to the NFLPA – not Plaintiff – to determine whether to waive it.

[8] This is the attorney referenced in Plaintiff's declaration.  *See* Decl. of Heather McPhee, dated January 20, 2026 ("Pl. Decl."), Docket No. 32-2 ¶¶ 10–11.

National Football League Players Inc. ("NFLPI"), who transmitted the information to Plaintiff in response to her request *so she could provide legal advice to her client, the NFLPA*. Supp. DePaso Decl. ¶¶ 6, 8–9. In any event, her duty as an attorney to safeguard client secrets is distinct from non-attorneys' obligations and extends to information broadly "gained in the professional relationship," not just information learned exclusively from the NFLPA. D.C. R. Prof'l Conduct 1.6(b). The comments to Rule 1.6 underscore that the ethical requirement to shield client secrets, "unlike the evidentiary privilege, exists without regard *to the nature or source of the information or the fact that others share the knowledge*." *Id.*, cmt. 8 (emphasis added).

Plaintiff does not deny that she learned the information disclosed in the Complaint, including information related to OTP, through her "professional relationship" with the NFLPA, and in fact ████████████████████████████████████████ ██████████████████ *See* Compl. ¶ 76 & n.4 (noting that Plaintiff "███████████████ ███████████████████████████████) (emphasis added); ¶ 79 (alleging that Plaintiff believed the NFLPA ████████████████████████████████████████ ███████████████); *see also In re Gonzalez*, 773 A.2d, 1026, 1030 (D.C. 2001) (rejecting argument that information about client's conduct was not "gained in the professional relationship"). As such, allegations related to information that OTP sent to the NFLPA, which Plaintiff used to support her argument that ████████████████████████████████, contained information that could harm the Union and thus could not be disclosed under Rule 1.6. *See* Part II.C (NFLPA's limited disclosures to OTP did not waive privilege).

### B.    The Complaint Contains Work Product and Attorney-Client Privileged Information

In our opening brief, we explained in detail how the Complaint is replete with information that is attorney work-product or attorney-client privileged or both.  Def. Br. at 15–22.  In response, Plaintiff raises three arguments.  First, she argues that the NFLPA has not provided sufficient competent evidence to assert privilege; second, she contends, for various reasons, that neither privilege applies to her allegations; and third, she asserts that the NFLPA has waived privilege on certain issues.  As discussed below, these arguments are meritless.

### i.    Allegations in the Complaint <u>Are Privileged on Their Face</u>

Plaintiff's argument that the NFLPA has not produced sufficient competent evidence to assert the privilege is wrong in numerous respects.  First, through the Declaration (and now Supplemental Declaration) of its General Counsel, Tom DePaso, it did submit sufficient evidence for the Court to determine whether the identified allegations should be sealed.  *See, e.g.*, DePaso Decl. ¶¶ 3–7, 9; *see generally* Supp. DePaso Decl. & Ex. A.  Second, however, the need for such "evidence" is unnecessary where, as is the case for many of the allegations here, the privilege determination can be made on the face of the Complaint.

In the context of discovery disputes, Federal Rule of Civil Procedure 26 allows a party to withhold information it claims is privileged so long as it can "describe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A)(ii).  The "universally accepted" means to do this is through "privilege log."  *Slaughter v. McDonough*, No. CV 18-1318 (RBW), 2022 WL 2817836, at *3 (D.D.C. July 19, 2022).  Alternatively, a party may also establish a privilege through "submission of a document which, clearly on its face, establishes all

the requirements for attorney-client privilege or work product." *In re Domestic Airline Travel Antitrust Litig.*, No. MC 15-1404 (CKK), 2020 WL 3496748, at *4 (D.D.C. Feb. 25, 2020).

       Here, the NFLPA has met its burden of supporting its assertions of privilege. The Complaint includes information far beyond that required in a privilege log because the disputed allegations, on their face, establish all the requirements for the attorney-client and work-product privileges. *See Touarsi v. United States Dep't of Just.*, 78 F. Supp. 3d 332, 345 (D.D.C. 2015) (holding that "legal advice" from attorneys to employees "concerning investigation strategies and a potential prosecution" was privileged "[o]n its face"); *Alexander v. F.B.I.*, 192 F.R.D. 42, 46 (D.D.C. 2000) (court found certain documents that indicated "on their face that they were given to attorneys for the purpose of securing advice" protected by privilege); *cf. Feld v. Fireman's Fund Ins. Co.*, 300 F.R.D. 9, 12 (D.D.C. 2014) (noting that privilege log entries "on their face" supported a designation of attorney work-product). There was no need for the NFLPA to provide any more information or additional reasons showing why the allegations revealed privileged information. *See Touarsi*, 78 F. Supp. 3d at 345; *Slaughter*, 2022 WL 2817836, at *3 (a court can use "common sense" in determining what information is privileged).

       Indeed, courts reviewing complaints with potentially privileged allegations often look no further than the four corners of the complaint to determine privilege. *See, e.g.*, *Bakios v. Michaels Stores*, Inc., No. 3:23-CV-01274-K, 2024 WL 812020, at *8 (N.D. Tex. Feb. 27, 2024) (sealing privileged allegations in complaint that revealed "substance of confidential communications" to attorneys); *Jett v. Cnty. of Maricopa*, No. CV-19-02735-PHX-DLR, 2019 WL 6310252, at *2 (D. Ariz. Nov. 25, 2019) (determining that paragraphs of complaint that "reflect communications between a county employee and a county attorney for the purpose of obtaining legal advice" should be sealed); *Harling v. Ado Staffing, Inc.*, No. 3:13-CV-1113-J-

34JRK, 2014 WL 12621226, at *1 (M.D. Fla. Jan. 23, 2014) (sealing allegations in a complaint

that "clearly" contained the "substance of protected communications with in-house counsel").

### ii.    The Complaint Contains Attorney Work-Product that Was Prepared in Anticipation of Litigation

The Complaint contains numerous allegations that reveal Plaintiff's mental

impressions and legal theories.  This "opinion" work product is "virtually undiscoverable."  *Dir.,*

*Off. of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997).

Notably, Plaintiff concedes that many paragraphs in the Complaint contain her mental

impressions concerning legal issues facing NFLPA.  *See* Pl. Br. at 24 (discussing the timing of

"impressions" Plaintiff "formed" in Paragraphs 5, 62, 69, 74–77, 79, 81–85, 88–89, 92–99, and

104); *id*. at 16–17 (discussing Plaintiff's "mental impressions" and "opinions" in the Complaint).

But she argues that her impressions are not protected because neither she nor the NFLPA

anticipated litigation at the time of her opinion.  This is flatly wrong.

Attorney work product is protected where it is prepared in "anticipation of

litigation."  Plaintiff's argument that such litigation must be "imminent," Pl. Br. at 23, is

incorrect; the litigation must only be "foreseeable." *E.g.*, *Ball v. Exec. Off. for United States*

*Att'ys*, No. CV 21-1949, 2024 WL 4024494, at *5 (D.D.C. Sept. 3, 2024) (rejecting

"imminence" standard).  And "litigation" includes not only civil litigation, but potential

government investigations that could lead to criminal litigation. *E.g*., *In re Sealed Case*, 146 F.3d

881, 885–86 (D.C. Cir. 1998) (documents prepared in anticipation of litigation where client

faced a potential federal governmental investigation); *Syron v. Fed. Hous. Fin. Agency*, No.

114MC359JEBJMF, 2014 WL 12623047, at *5 (D.D.C. Dec. 31, 2014) (anticipation-of-

litigation requirement covered "documents prepared in the course of a regulatory investigation").

Here, both the NFLPA and Plaintiff knew ████████████████████████████████████
████████████████████████████████████████████

      The Complaint itself makes this clear.  Plaintiff alleges, for example, that when
she first learned about the existence of the SEIP in November 2024, Compl. ¶ 74, she was
"████████████████████████████████████████████████████
████████████████" *id.* ¶ 75 (emphasis added), and that she ████████████████████
████████████████████████ *Id.* ¶ 77.  The very next month, in December 2024,
she learned that whistleblowers from another union, the Major League Baseball Players
Association ("MLBPA"), had reported "legal concerns to labor officials in the federal
government" related to the SEIP.  *Id.* ¶ 78.  She then states that she ████████████
████████████████████████████████████████████████████
████████████████████████████ *Id.* ¶ 79 (emphasis added).  Her
own Complaint (contradicting her Declaration) thus shows that she ████████████████
████████████████████████████████████████████████

      Plaintiff's mental impressions and opinions immediately after she learned about
the SEIP, followed closely on the heels by news of the MLBPA whistleblowers reporting to the
federal government and the NFLPA initiating its own investigation, were plainly formed, at least
in part, in anticipation of litigation.  *See United States v. Deloitte LLP*, 610 F.3d 129, 138 (D.C.
Cir. 2010) (anticipation of litigation need not even be the primary purpose of a document's
creation); *In re Sealed Case*, 146 F.3d at 885–86 (work-product privilege applied where lawyer
rendered "legal advice in order to protect the client from future litigation about a particular
transaction," even absent a specific claim at the time); *U.S. Airline Pilots Ass'n v. Pension Ben.*

*Guar. Corp.*, 274 F.R.D. 28, 30 (D.D.C. 2011) (internal investigation was prepared in anticipation of litigation where attorney investigated possible violations of fiduciary duties).

Moreover, the contemporaneous documentation reveals that Plaintiff anticipated litigation related to OTP and the SEIP immediately after learning about it. ████████████

████████████████████████████████████████████████

████████████████████ *See* Supp. DePaso Decl. ¶ 17. ████████████████████

██████████████████████████████████████████

████████████████████████████████████████

████████████████████████ *Id.* ████████████████ after hearing that the MLBPA whistleblowers had reported concerns related to the SEIP grants to the government, Plaintiff ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ *Id.* ¶ 13 (emphasis added).

Around that same time, Plaintiff provided legal advice to the NFLPA relating to the SEIP based on her opinion ████████████████████████████████

████████ For instance, Plaintiff ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ *Id.* ¶ 14. She ████████████████████



*Id.* ¶ 16.

Shortly thereafter,

*Id.* ¶ 18.

*Id.*

¶¶ 18–19.   This sequence of events reflects that Plaintiff and the NFLPA anticipated litigation or

a government inquiry related to the SEIP at least as early as November/December 2024.

### iii.    <u>The Complaint Contains Attorney-Client Privileged Information</u>

Finally, the Complaint includes allegations concerning Plaintiff's legal advice and

communications with her client, the NFLPA, that are protected by attorney-client privilege.

Plaintiff makes four arguments in response: first, that certain communications are unrelated to

legal advice; second, that certain communications do not rely on information from the NFLPA;

third, that certain of the allegations are not "communications" protected by the privilege; and

fourth, that certain allegations only relay facts.  We address each argument in turn.

### 1.    *<u>Plaintiff's Communications Related to Legal Advice</u>*

First, the communications Plaintiff flags as "unrelated to legal advice," are, in

fact, directly tied to her role as in-house counsel and her legal opinion, coordinated with outside

labor counsel, about Linklaters' internal investigation of the propriety of the SEIP.  While

Plaintiff cherry-picks certain snippets of paragraphs in the Complaint in an attempt to show that

her allegations should not be sealed, when read in context, the presence of privileged information is apparent.  For example, Plaintiff alleges that DePaso ███████████████████████████ ████████████████████████████████████████████ Compl. ¶ 94, and that ██████████████████████████████████████████████ ███████████████████████████████████████████████████

███████ *Id.* ¶ 104.  When read in the context of Plaintiff's allegations that the NFLPA ██████ ██████████████████████████████████████████ *id.* ¶ 92, these allegations reveal information about ████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████ In short, these allegations all directly relate to ██████████████████████████████████████████ *E.g.*, *Davenport v. Djourabchi*, No. CV1602445ABJRMM, 2020 WL 7042813, at *6 (D.D.C. Nov. 30, 2020) (questions about how clients' "scrutiny and review of [their attorney's] filings and communications changed may implicate the attorney-client privilege if it implicitly reveals substantive attorney-client conversations about the reasons or circumstances that led to the change").

### 2.  *Plaintiff's Communications Relied on Confidential Information from the NFLPA*

Plaintiff contends that only her communications that rely on *privileged* information *from the NFLPA* are themselves privileged.  Pl. Br. at 15 (Plaintiff was "not relying on privileged information").  The law, however, does not support this contention. Instead, "[c]ommunications from attorney to client are shielded if they rest on *confidential*"—not just privileged—"information obtained from the client."  *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984) (emphasis added); *see also Tourarsi*, 78 F. Supp. 3d at 345.  Furthermore, contrary to

Plaintiff's argument, the "fact that a request for legal advice concern[s] information originating with a third party does not necessarily defeat the claim of privilege" when that information is used to inform legal advice about the *client's* "own actions and legal interests," as it was here. *Jud. Watch, Inc. v. U.S. Dep't of Treasury*, 802 F. Supp. 2d 185, 201 (D.D.C. 2011); *see also Jones v. Carson*, No. CV 15-310 (CKK/GMH), 2018 WL 11410070, at *9 n.10 (D.D.C. Mar. 30, 2018) (same).

As discussed *supra*, Plaintiff's Confidentiality Agreement provides that "any information" she obtained because of her "relationship with NFLPA" was confidential. *See* Supp. DePaso Decl. Ex. B. Plaintiff concedes in her declaration that the OTP documents that she reviewed were sent to her by Sophie Gage, an attorney at NFLPA's wholly owned subsidiary NFLPI. *See* Decl. of Heather McPhee, dated January 20, 2026 ("Pl. Decl."), Docket No. 32-2 ¶ 10; Supp. DePaso Decl. ¶¶ 5–6; *see also* Compl. ¶ 76 & n.4 (noting that Plaintiff ████████████████████████████████████████████████████. Thus, Plaintiff received confidential OTP documents through a communication from her client, the NFLPA. *See* Supp. DePaso Decl. ¶¶ 5–6, 8–9.

As discussed below, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *Id.* ¶¶ 6, 8–9; *cf. In re Sealed Case*, 737 F.2d at 100–01 (attorney's communications to client regarding conversation he overheard at airport hotel were not privileged); *Cobell v. Norton*, 226 F.R.D. 67, 88–89 (D.D.C. 2005) (communication from attorney to agency employee not based on confidential information where employee received an "unsolicited call" from attorney and the two "had never communicated prior to the relevant conversation"). ████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████ Supp. DePaso Decl. ¶ 8.  This, standing alone, is sufficient to bring

Plaintiff's communications within the privilege.  *In re Sealed Case*, 737 F.2d at 99 (privilege

cloaks communication from attorney to client that is based "***in part at least***" upon a confidential

communication from the client) (emphasis in original); *see also Jud. Watch*, 802 F. Supp. 2d at

201–02 (documents analyzing third-party's compensation structure were privileged because they

related to the client's "own actions and legal interests"); *United States v. Philip Morris USA,*

*Inc.*, No. 99-CV-2496 (GK), 2004 WL 7372141, at *14 (D.D.C. June 29, 2004) ("[E]ven if a fact

is publicly known, if it is included in a confidential communication from a client to an attorney

for the purpose of seeking legal advice, the communication will be privileged.").



More specifically, ████████████████████████████

███████████████████████████████████████████

██████ *See* Supp. DePaso Decl. ¶ 6. ████████████████████████

████████████████████████████████████████████

██████████████████████████ *Id.* █████████████████████

████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████ *Id.* ¶ 8.   These ██████████████████

██████████████████████ *Id.* ¶ 8–9.

Plaintiff's subsequent legal advice was based, at least in part, on these and other

communications from her client, thus bringing it directly within the sphere of the attorney-client

privilege.  *In re Sealed Case*, 737 F.2d at 99; *see also Jud. Watch*, 802 F. Supp. 2d at 201–02;

*Jones*, 2018 WL 11410070, at *9 n.10 (noting that "a communication comprised *entirely* of

information from a third party is not privileged") (emphasis added).  For example, 

Supp. DePaso Decl. ¶ 15.

For these reasons, Plaintiff's argument that her communications were not privileged because they were based on information from OTP, rather than her client, is unavailing.

### 3.    *Plaintiff's Allegations Reveal Privileged Communications*

Plaintiff contends that the "vast majority" of the paragraphs that the NFLPA seeks to seal involve her "opinions," not her "communications," and thus are not within the attorney-client privilege.  Pl. Br. at 16.  But certain of her "opinions" in the Complaint, *see* Compl. ¶¶ 62, 69, 74, 75, 79, while not directly quoting from a communication, were contained in confidential legal memoranda and other legally privileged emails that she and/or outside counsel communicated to the NFLPA.  Supp. Depaso Decl. ¶ 23.  It would nullify the privilege if the Plaintiff could simply extract legal opinions from those memoranda and emails and then claim they are not a "communication."  The Court should reject this attempt to do an end run around the privilege.

In any event, the Complaint shows that Plaintiff conveyed her opinions and legal concerns to her client.  For example, she alleges in one paragraph that she ███████████ Compl. ¶ 76, and in the next that she ███████████████, *id*. ¶ 77.  Paragraph 76 makes clear that

the ███████ referenced in Paragraph 77 ████████████████████████████████
████████████████████████████████ *See Nesse v. Pittman*, 206 F.R.D. 325, 329 (D.D.C. 2002) (sustaining attorney-client privilege over notes that "indirectly capture[d]" a prior communication between lawyer and client); *W. Trails, Inc. v. Camp Coast to Coast, Inc*., 139 F.R.D. 4, 14 (D.D.C. 1991) (documents privileged where they "directly or indirectly reveal[ed] confidential attorney-client communications relating to legal advice").



Similarly, Plaintiff alleges she ████████████████████████████████ ███████, Compl. ¶ 85, that they ████████████████████████████████, *id*. ¶ 89, but that ████████████████████ *Id.* ¶ 90.  These allegations reveal ███ ████████████████████████████████ Similarly, her allegations that she ████████████████████████, *id*. ¶ 105, ████████████████ ████████████████████████████, *id*. ¶ 112, also indirectly reveal privileged communications as to the legal opinion ████████████████████ ████████████████████████████████████ ███████

A party cannot skirt the bounds of the attorney-client privilege by disclosing in an indirect manner something that would be privileged if stated directly.  *E.g*., *United States v. Naegele*, 468 F. Supp. 2d 165, 169 (D.D.C. 2007) ("any communications (or portions thereof) that embody an attorney's confidential legal advice . . . are protected by the attorney-client privilege"); *Banks v. Off. of Senate Sergeant-At-Arms*, 228 F.R.D. 24, 27 (D.D.C. 2005) (sustaining privilege over communications that did not specifically disclose legal advice because, when "read as a whole," it was clear they "were intended to be confidential and were part of the

process by which the [client] sought legal advice from counsel"). Plaintiff's attempt to do so here should be rejected.

**4.** ***"Facts" in the Complaint Reveal Privileged Information***

Finally, and relatedly, Plaintiff argues that certain of her allegations rest on non-privileged "facts." Pl. Br. at 18. In the paragraphs she identifies, however, these so-called "facts"—about ███████████████████████████████████████ ███████ Compl., ¶ 81, ███████████████████████████████████████ ███████████████████ *id*. ¶ 89, her recounting of ████████████████████ ██████████████████████████ *id*. ¶ 92, a ███████████████████ ██████████████████████████ *id*. ¶ 97, and a ███████████████ ███████████████████████ *id*. ¶ 163—all either implicitly or explicitly disclose attorney-client privileged information. *E.g.*, *Davenport*, 2020 WL 7042813, at *6 (questions eliciting answer that would "implicitly reveal[]" attorney-client conversations barred by privilege); *Alexander*, 186 F.R.D. at 47 (questions regarding what a client did with counsel to prepare for deposition were privileged because "the disclosure of what [client] *did* with counsel would have been tantamount to revealing the substances of what was discussed with counsel").

**C.    The NFLPA Did Not Waive Attorney-Client or Work-Product Privilege**

Plaintiff also asserts that the NFLPA waived privilege in four discrete instances:



Pl. Br. at

19–22, 25.  Even assuming the truth of these largely second-hand and hearsay assertions in

Plaintiff's declaration, these disclosures of limited information do not effectuate a waiver.

    *First*, the NFLPA did not waive privilege when ███████████████████

█████████████████████████████████████ an organization with a common

legal interest in the legality of the SEIP in which the NFLPA held a 44% interest and appointed

the most Board members.  Disclosing the *existence* of an investigation does not waive the

privilege with respect to the investigation.  *See, e.g.*, *In re Kellogg Brown & Root, Inc.*, 796 F.3d

137, 147–48 (D.C. Cir. 2015) (no waiver where party disclosed the fact of an internal

investigation); *United States v. White*, 887 F.2d 267, 271 (D.C. Cir. 1989) (noting that a "general

assertion lacking substantive content that one's attorney has examined a certain matter is not

sufficient to waive the attorney-client privilege").  Nor does disclosure of the fact that ██████

████████████████ or that the ██████████████████████ (Pl. Decl. ¶¶ 22–24)

waive any privilege.  *In re Kellogg Brown & Root, Inc.*, 796 F.3d at 147–48 (no waiver of

privilege based on a party's statement suggesting its internal investigation found no evidence of

wrongdoing); *see In re FirstEnergy Corp.*, 154 F.4th 431, 443 (6th Cir. 2025) (no waiver where

party disclosed "bare conclusions from [an] investigation"); *In re Fluor Intercontinental, Inc.*,

803 F. App'x 697, 702 (4th Cir. 2020) (disclosures to government describing "general

conclusions about the propriety" of an employee's conduct following internal investigation did

not waive attorney-client privilege).  Similarly, Plaintiff's conclusory claim that ███████████

███████████████████████████████████████████████████████████████████

███████████████████████████████ does not allege that any substantive

privileged information was revealed, and therefore it does not waive privilege.  Pl. Decl. ¶ 31;

Compl. ¶ 144; *see White*, 887 F.2d at 271.

*Second*, even if the NFLPA waived the attorney-client privilege, which it did not, the waiver is limited only to those specific communications and does not constitute a broader subject matter waiver.  Federal Rule of Evidence 502(a), which governs the scope of a privilege waiver, provides in certain limited circumstances for subject matter waivers if a party discloses attorney-client or work-product privileged material "in a federal proceeding or to a federal office or agency."  Fed. R. Evid. 502(a).  This is to prevent a party from using privileged information as both a shield and a sword in ligation.  *See U.S. Airline Pilots Ass'n*, 274 F.R.D. at 32.  By contrast, subject matters waivers do not apply to extra-judicial statements.[9]  Fed. R. Evid. 502(a); *see, e.g.*, *Vasquez v. Whole Foods Mkt., Inc.*, No. 16-CV-2483 (APM), 2021 WL 11432979, at *3 (D.D.C. Nov. 29, 2021) (disclosure made outside the context of litigation did not effectuate subject-matter waiver); *Hughes v. Abell*, No. CV 09-0220 (JDB), 2012 WL 13054819, at *3 (D.D.C. Mar. 7, 2012); *see also In re Keeper of Recs. (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 29 (1st Cir. 2003); *In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987). Accordingly, any alleged waiver would be limited to the narrow statements made, and not to the broader subject matter.

*Finally*, in addition to being subject to the attorney-client privilege, the Linklaters investigation and report concerning the SEIP remains protected as attorney work-product.  *E.g.*, *In re Kellogg Brown & Root, Inc.*, 796 F.3d at 147 (conclusions of an investigation can constitute opinion work product); *U.S. Airline Pilots Ass'n*, 274 F.R.D. at 30 (same).  Indeed, the D.C. Circuit has held that there is no waiver of the work-product privilege between two parties (here,

---

[9] The case relied upon by Plaintiff (Pl. Br. at 18) for the argument that the NFLPA has waived subject matter privilege (*In re Sealed Case*, 676 F.2d 793 (D.C. Cir. 1982)) has been overruled by amendments to Rule 502.  *See Animal Welfare Inst., v. Feld Ent., Inc.*, No. CV 03-2006 (EGS/JMF), 2014 WL 12775090, at *2 (D.D.C. Jan. 23, 2014) (the revised Rule 502 "abolished subject matter waiver as defined in *In Re Sealed Case*").

OTP and the NFLPA) when they "anticipate litigation against a common adversary on the same issue or issues." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1300 (D.C. Cir. 1980); *see Deloitte*, 610 F.3d at 140 (disclosure of documents from company to its auditor did not waive work product because in preparing the at-issue documents, company anticipated a dispute with the IRS, not its auditor); *Feld v. Fireman's Fund Ins. Co.*, 991 F. Supp. 2d 242, 252 (D.D.C. 2013) ("it is well-settled that it is more difficult to waive the attorney work-product privilege than it is to waive the attorney-client privilege"). Indeed, Plaintiff does not even argue that these disclosures waived the *work-product* privilege. Pl. Br. at 18–22.

## CONCLUSION

For all the foregoing reasons, the Court should grant the NFLPA's Motion to Seal the specified portions of the Complaint and issue a protective order prohibiting Plaintiff from disclosing privileged or confidential information in the public filings in this case.

Dated: February 3, 2026

Respectfully submitted,

/s/ Susan Davis
Susan Davis*
Evan Hudson-Plush*
Daniel M. Nesbitt*
Kayla Morin* (D.C. Bar No. 90007996)
COHEN, WEISS AND SIMON LLP
909 Third Avenue, 12th Floor
New York, NY 10022
sdavis@cwsny.com
ehudson-plush@cwsny.com
dnesbitt@cwsny.com
kmorin@cwsny.com

*admitted pro hac vice*

/s/ Jacob Karabell
Jacob Karabell (D.C. Bar No. 996066)
BREDHOFF & KAISER PLLC

805 15th Street, NW, Suite 1000
Washington, DC 20005
jkarabell@bredhoff.com

*Attorneys for Defendants National Football League
Players Association and Tom DePaso*