UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * | ) | |
| HEATHER McPHEE, | ) | Civil Action |
| | ) | No. 25-04409 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NATIONAL FOOTBALL LEAGUE | ) | Washington, D.C. |
| PLAYERS ASSOCIATION, et al., | ) | April 8, 2026 |
| | ) | 3:19 p.m. |
| Defendants. | ) | |
| | ) | |
| * * * * * * * * * * * * * * * * | ) | |

TRANSCRIPT OF PRE-MOTION CONFERENCE
BEFORE THE HONORABLE AMIR H. ALI
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:
COURTNEY R. FORREST, ESQ.
COLBY L. MOORE, ESQ.
KAISER, PLLC
1099 14th Street, Northwest
Eighth Floor
Washington, D.C. 20005

FOR THE DEFENDANTS NFLPA & DePASO:
EVAN HUDSON-PLUSH, ESQ.
COHEN, WEISS & SIMON, LLP
909 Third Avenue
Twelfth Floor
New York, New York 10022

JACOB R. KARABELL, ESQ.
BREDHOFF & KAISER, PLLC
808 15th Avenue, Northwest
Suite 1000
Washington, D.C. 20005

APPEARANCES, CONT'D:

FOR THE DEFENDANT CURTIN: BRIDGET M. FITZPATRICK, ESQ.
MUNGER, TOLLES & OLSON, LLP
601 Massachusetts Avenue, Northwest
Suite 500E
Washington, D.C. 20001

FOR THE DEFENDANT HOWELL: WILLIAM R. MARTIN, ESQ.
BARNES & THORNBURG, LLP
555 Twelfth Street, Northwest
Suite 1200
Washington, D.C. 20004

TILLMAN J. FINLEY, ESQ.
MARINO FINLEY, LLP
818 Connecticut Avenue, Northwest
Suite 801
Washington, D.C. 20006

REPORTED BY: LISA EDWARDS, RDR, CRR
Official Court Reporter
United States District Court for the District of Columbia
333 Constitution Avenue, Northwest
Room 6509
Washington, D.C. 20001
(202) 354-3269

THE COURTROOM DEPUTY: This is Civil Action 25-4409, *Heather McPhee versus the National Football League Players Association, et al.*

May I have counsel approach the lectern and state your appearance for the record, beginning with Plaintiff's counsel.

MS. FORREST: Good afternoon, your Honor. Courtney Forrest on behalf of Plaintiff, Ms. McPhee. With me is my colleague, Colby Moore. And Ms. McPhee is at counsel table with us.

THE COURT: Good afternoon to all of you.

MR. HUDSON-PLUSH: Good afternoon, your Honor. Evan Hudson-Plush from Cohen, Weiss & Simon for the Defendants, NFLPA, the National Football League Players Association, and also Tom DePaso. Also in the courtroom in the gallery is Ned Ehrlich. He's associate general counsel for NFLPA.

THE COURT: Good afternoon.

MR. KARABELL: Good afternoon. I'm Jacob Karabell, also for the Defendant, NFLPA, and Mr. DePaso at Bredhoff & Kaiser.

THE COURT: Good afternoon.

MR. MARTIN: Good afternoon, Judge. I'm listed as Billy Martin, but my bar is William R. Martin. I'm here on behalf of Lloyd Howell. With me is my colleague, Tillman

Finley.

MR. FINLEY: Good afternoon.

THE COURT: Good afternoon to both of you.

And to the parties in the room, welcome. Oh, I'm sorry. One more counsel. Go ahead. Please.

MS. FITZPATRICK: Good afternoon, your Honor. Bridget Fitzpatrick of Munger, Tolles & Olson on behalf of Defendant Matt Curtin.

THE COURT: Good afternoon.

I'll finish what I was saying a moment ago. To the parties in the room, welcome. I say this anytime a party is present in court. This case isn't about lawyers; it's about the parties and resolving a dispute between them. So you are always welcome, if not encouraged, to attend court proceedings.

All right. We are here on a pre-motion conference. I'll give you a little bit of context for how I think of pre-motion conferences, because many other judges hold similar-type conferences, but I prefer that you understand my purpose in doing so so you can gear your arguments and submissions today accordingly.

Well, why don't I do that at the outset. I do not hold these hearings for the purpose of strongly previewing my views of the merits of any argument in the case. In fact, I'm very careful not to develop those views or any

kind of, you know, concrete sense of how I would resolve the issues. And the reason for that in my mind is simple, which is that I don't have the full briefing on the issues yet. So I'm not going to do that until I have the full briefing. And sometimes parties understandably draw an inference that maybe I'm not going to allow them to file their motion. That's not the direction this is headed.

That said, I do find these statements to be a helpful thing to receive and that these conferences can be quite helpful. This one, I think, has already proven one of the reasons, which is that I've found often that parties jump right into motions to dismiss, go through full briefing, and a great degree of delay can occur. And then the Plaintiff realizes we just had more allegations we could have added to the complaint to resolve that. And I understand right now there's already a proposal on the table from the parties jointly to allow an amendment and more, I think, efficiently go to a motion to dismiss schedule that would be on the amended complaint. And so that's one of the reasons I do this.

I did still think on balance it would be helpful to get in the courtroom and understand the next steps in the case, particularly given, I think, the joint proposal to not have another round of pre-motion statements. I saw that, and I think that's reasonable. But if we're going to do

that, I think now is my opportunity to just kind of understand what's to come, understanding that there might be some changes in light of the fact that the pleadings are going to be amended.

So one of the things I want to understand in light of this is I'm not going to ask you to read to me the amendments you'll make to the complaint, but I will want to understand kind of generally speaking what those amendments entail.

And then based on what we have, I won't make this decision until I have the amended complaint, but I do like to think about what next steps make sense in a case, including the question of whether it makes sense for the case as a whole or in part to move forward pending resolution of the motion to dismiss. That's what I'm looking at the pre-motion statements with an eye towards and what it'd be helpful to hear from counsel on.

I will say in this case it's not a case where -- there are some fact-bound questions in here in the claims, is my sense. But it does seem to me like a case where there's some legal issues to decide, and it's not one where, you know, the Defendants are just advancing affirmative defenses that need not be pled in the first instance or anything like that. So there wasn't anything obvious that jumped out at me.

But I still think I'd like the parties' submissions as it relates to the arguments that are likely to be raised in the motion to dismiss and how that bears on next steps in the case.

All right. With that, maybe I can start, then, with Plaintiff's counsel and hear a little bit about what amendments I should be expecting.

MR. LEE: Sure, your Honor.

Again, Courtney Forrest from Kaiser on behalf of the Plaintiff.

THE COURT: And I should say, you're welcome to stay seated and make submissions as long as your microphone is on, which yours is. There's only one microphone at the table, so other counsel are welcome to come up to the microphone here.

MS. FORREST: Your Honor, when we filed the original complaint, Ms. McPhee was still on paid administrative leave pending an internal investigation at the NFLPA. After we filed the complaint, she was terminated. So we do anticipate adding a claim for wrongful termination to the complaint.

In addition, we've continued gathering information that bears on the claims that we've already pled in the complaint. So we would anticipate adding some additional factual support for those allegations as well.

THE COURT: Okay. On the termination point, it would just be an additional adverse action essentially for discrimination and I suppose just generally?

MS. FORREST: It would be a claim for wrongful termination under D.C. common law.

THE COURT: Oh, an additional claim for wrongful termination.

MS. FORREST: Yes. Yes, your Honor.

THE COURT: Got it.

Okay. And then in terms of the additional allegations, is there a particular area, just so I can be mindful of the current -- again, I'm not asking for the specific allegations. But if I can understand where you anticipate shoring up the complaint, that would be helpful.

MS. FORREST: Yes. And I don't want to represent that I'm giving you a complete list of the things that we'll be adding.

For example, in the termination notice that Ms. McPhee received when she was terminated after we filed the complaint, there's some things in that termination notice that we believe support our allegations that the investigation into her was pretextual and intended to prevent her from testifying in a grand jury investigation and also that it was pretextual and really motivated by sex discrimination. So we'll be using the content of the

termination notice as additional allegations in the complaint.

THE COURT: Are there other allegations beyond the termination and kind of what you can draw out of the termination letter that you plan to add in light of the arguments that were made in the pre-motion statements?

MS. FORREST: We may, yes. I think there are some additional allegations we can make that support the sex discrimination claim. And also, you know, we are continuing to learn new information about the support of the existence of a conspiracy amongst the Defendants.

THE COURT: Thank you. That's helpful.

Let me turn to the Defendants just because this is still a pre-motion conference on the Defendants' plans, motions. I've read the statements filed by all the sets of Defendants and I've read the response. I don't know if you all have an order of operations, if you've thought about that at all.

MR. HUDSON-PLUSH: We haven't. I'm happy to go first if that's okay with you all.

THE COURT: Yes. Go ahead.

MR. HUDSON-PLUSH: I mean, would you like me to go through the bases that was set forth in our statement?

THE COURT: I mean, I don't need you to repeat the statements, because I've read them. But maybe to the extent

you can address the thing I mentioned at the outset that I'm thinking about, which is the next steps for this case. Obviously, one next step will be amendment. But I'll want to look at that amended complaint and decide, is this a case that ought to wait for full resolution of the motion to dismiss or should I just have you all meet and confer and start talking about discovery?

MR. HUDSON-PLUSH: Right.

So we obviously don't know whether we'd move to dismiss the wrongful termination claim until we see it. But as currently stated, there are four claims. And three out of those four would be dismissed if the Defendants prevail. And the last is essentially a breach of contract action, which we're saying the Court wouldn't have supplemental jurisdiction.

Given that it's a fully dispositive motion, I think the well-settled rule in D.C. at least is that discovery is stayed pending that motion so that we don't waste the resources involved with discovery on claims that --

THE COURT: Well, I think I would state the rule slightly differently unless you want to give me a case. But I mean, I think it's fair that a first question I would ask, and I look at that here as, you know, is this going to be a motion to fully dismiss the claims or is it a partial motion

to dismiss? That can obviously bear on the questions I think about.

But the other pieces, is there a realistic likelihood of dismissal -- right? -- if I look at the claims? I gave you the example of affirmative defenses, right? Someone's raising a statute of limitations defense or an exhaustion defense, which happens in these types of cases.

You know, those can succeed if the Plaintiff pleads themselves out of court. But there's generally not an obligation to plead that. So I don't think it's so simple to say there's a well-established rule that the cases move forward as soon as you cover, you know, all of the claims.

MR. HUDSON-PLUSH: Okay. It's certainly within the Court's discretion, depending on the strength of the motion about whether discovery proceeds. I'm not going to take issue with that.

THE COURT: Yes.

MR. HUDSON-PLUSH: The other issue that I think will bear on whether discovery should proceed is that the NFLPA is considering counterclaims. And if those counterclaims are asserted, the way we read the rule is that a counterclaim could only be asserted under Rule 13 in a pleading. Under Rule 12, there won't be a pleading until we

have an answer on the motion to dismiss. So there's kind of no way to assert it absent leave of the Court to permit that counterclaim to go forward pending the motion.

THE COURT: Wait. Can you give me that again? Why do you need leave of the Court?

MR. HUDSON-PLUSH: Just the way we read the Federal Rules of Civil Procedure is that counterclaims need to be asserted in a pleading. And under Rule 12, there is no pleading pending a motion to dismiss. In other words, you normally put them at the end of the answer.

THE COURT: Got it.

MR. HUDSON-PLUSH: I'm raising this now just because it could bear on the scope of discovery.

THE COURT: Got it. Understood. Understood.

So you're not saying that the counterclaims would come now; you're saying they would actually come following the motion to dismiss and because of the way the rules are structured.

MR. HUDSON-PLUSH: Right; and which would augur towards not having discovery until we are able to assert counterclaims.

THE COURT: I see. That's a helpful point. Thank you.

And the reason I raised the point before -- I mean, well, let me ask you this way. I mean, I think that,

for example, the witness question, I think the question of whether economic intimidation counts -- and I'm not saying that -- you know, you all amend the complaint and figure out exactly where you land on that in terms of the Plaintiffs. But those strike me as kind of legal questions that just need to be resolved.

But are there arguments you would point me to at this point where you wanted to say, you know, Look, if you want to know if we've got a real colorable shot of defeating this, just go read this argument, this case, and you'll see that for any of these claims?

MR. HUDSON-PLUSH: Well, I can go through our arguments for each. I think each have different points of law.

I mean, on the "not a witness," there's a case out of the Southern District called *Geaney*, which we cited in our papers. The Plaintiff did not respond to it. It's probably the closest factual case on point. And we don't know what the amended complaint will say. But we don't think that the Plaintiff is a witness as that term is defined in the statute.

For the force, intimidation or threat, the cases the Plaintiff --

THE COURT: And the reason is just agreeing to meet with DOJ is not enough?

MR. HUDSON-PLUSH: Yes. So her allegations that she would cooperate with the DOJ or -- and share information with them, that is not "intends to call as a witness," which is the phrase used by the Second Circuit.

THE COURT: Okay.

MR. HUDSON-PLUSH: And there's, you know, a line of -- three or four lines of cases which have similar facts to those alleged here which were dismissed. Obviously, we didn't have room in our pre-motion papers to put all of those.

THE COURT: Understood.

MR. HUDSON-PLUSH: On the --

THE COURT: I'm not holding you to just what you say now on the merits. I'll be very clear about that. This is going to help me when I get the amended complaint to decide what to do with it.

MR. HUDSON-PLUSH: Understood.

On the force, intimidation or threat requiring threats of violence, we cited the concurrence in the Second Circuit and a district court case in the Second Circuit. The cases the Plaintiff cites in response do not actually address this point. They -- the argument wasn't made that those cases are -- have facts where there was no violence and they moved forward, but it was addressing it under the injury requirement. *Haddle*, the Supreme Court case dealing

with this, Footnote 3 specifically left this question open. So it's purely a question of law.

For the lack of a plausible conspiracy, here, you know, this is just applying the law to the pled allegations in the complaint. There's no one case, you know. But there needs to be an agreement to participate in an unlawful act.

And May 30th, 2025, is when the Plaintiff -- is the key date when the Plaintiff reported about the -- her interactions with the DOJ. And after that, really the key allegation is that she was told that she could not speak to the board of the PA or its executive committee about the allegations -- about the DOJ investigation.

But there's not one allegation that they -- anyone asked her not to speak to the DOJ or not to testify. And in fact, in her administrative leave letter, which is incorporated in the complaint, so I think we can rely on it, there's -- it's very explicit. It says: Nothing in this notice is intended to or should prevent you from cooperating with any request or providing truthful, non-privileged information --

THE COURT: Can I just ask you on that front, I thought you were talking about whether she had plausibly alleged a conspiracy, which I understand to usually mean the meeting of the minds. But now I think you're talking to me about --

MR. HUDSON-PLUSH: Well, and an unlawful act.

THE COURT: -- intimidation.

MR. HUDSON-PLUSH: And an unlawful act.

THE COURT: And an unlawful act. Got it.

MR. HUDSON-PLUSH: So there's got to be a meeting of the minds on an unlawful act.

And basically what we're getting at here is it can't -- having her not participate with the board and the executive committee is not an unlawful act.

THE COURT: Okay.

MR. HUDSON-PLUSH: And, you know, she is an attorney for the PA. She has privileged information. So of course the PA did not give her permission to waive privilege on behalf of the PA when talking. But it's very clear that there's no allegation that she could not speak to the DOJ or testify before the DOJ.

And then the last argument on the 1985 is that Defendant DePaso was -- all the allegations are within the scope of his duties as a lawyer for the PA. And there's -- the main case there is out of the Eleventh Circuit, *Farese v. Scherer*, 342 F.3d 1223. I think we cited that. As long as he's acting within the scope of his duties as an attorney to the PA, then there can't be a conspiracy under 1985 against him personally.

THE COURT: Okay. I mean, I'm not going to get

all the way into the merits. Obviously, Plaintiffs have the response that there was personal benefit sought and there was a personal stake in it, and that defeats that immunity. But I don't need to have you respond to that.

I think I'm picking up, consistent with what I said, that at least it seems like for the conspiracy claim it doesn't seem to be facing some kind of threshold legal issues for me to resolve unless the amended complaint's going to dramatically change something about that and, frankly, legal issues that would provide, you know, either there would be entitlement to dismissal. But even if not, there would be a real important guidance given to the parties about the scope of the claims.

MR. HUDSON-PLUSH: Yes. I agree with that.

THE COURT: All right. Any other claim you want to highlight for me?

MR. HUDSON-PLUSH: We also move on the intentional infliction of emotional distress. The standard is extraordinarily high, and I think the *Kerrigan* case out of D.C. forecloses her claims, because in the employment context it was a highly factually similar case.

THE COURT: Okay. Do you want to talk about sex discrimination?

MR. HUDSON-PLUSH: Sure. I mean, we think the vast majority of her allegations are allegations that the PA

acted to deter her from testifying to the DOJ, not based on her sex.

In addition, in the mixed motive cases, there can be mixed motives, of course. But all she alleges is it's been a motivating factor of the NFLPA. We don't think that's enough. There's a case -- it's not in our papers, because we didn't have rebuttal -- but there's a case, *Ross versus United General Construction*, out of the D.C. Court of Appeals, 285 A.3d 186.

THE COURT: What year is that case?

MR. HUDSON-PLUSH: It's 2022.

And it defines mixed -- motivating factor in the mixed motive context as a substantial factor, a significant motivating factor. And we don't think she's met that standard.

THE COURT: That's helpful.

Okay. Let me hear -- I want to give the other Defendants an opportunity. I think I have your point on the breach-of-contract claim already.

MR. HUDSON-PLUSH: Supplemental jurisdiction.

THE COURT: Yes; with the conspiracy claim, and so there wouldn't be supplemental jurisdiction. Is that the argument?

MR. HUDSON-PLUSH: Yes. Yes, your Honor.

THE COURT: If -- only if the Defendants have

additional points they want to add. I know some of the individual Defendants have some separate arguments. You're also -- again, with the purposes I had in mind, not a merits argument here, but for the purposes I had in mind, anything else you want to add would be fine, too.

MR. FINLEY: So, your Honor, Tillman Finley on behalf of Lloyd Howell, who's the previous executive director of the PA.

Obviously, all the same things that the PA said would apply.

In particular, to your point, though, about kind of the dispositiveness of a potential motion here, it's even more the case with Mr. Howell on all of those claims, because on the conspiracy claim, if for all the reasons that apply equally to the PA in terms of -- and your Honor's totally right that it's kind of a threshold legal issue on her status as a witness within the meaning of the statute.

But in addition to all of that, Mr. Howell -- we had raised the intracorporate conspiracy issue here, which applies certainly to all of the Defendants. The only real response to that is a five-one Circuit split against the Plaintiff's position that that rule doesn't apply to civil rights conspiracies. Obviously, that's an uphill climb.

But the only other response was to say, Well, even though he's not named as a defendant, Mr. Sansiveri is an

unindicted co-conspirator, essentially. That would take it out.

Well, that might save a conspiracy claim against the PA, but it would not against any of the other Defendants, including Mr. Howell. So he'd still be out in any event.

THE COURT: Well, can you explain that? Why is that?

MR. FINLEY: Well, because he is incapable of conspiring with his employer or his co-employees because he is an officer of the corporation, or at least was.

THE COURT: I see.

MR. FINLEY: And the fact that the corporation or the entity, legal entity, might have conspired with somebody external, that's maybe a conspiracy between the entity and that outside party.

It doesn't --

THE COURT: I see. You're saying the exception that would apply --

MR. FINLEY: Yes.

THE COURT: -- because of Mr. Sansiveri --

MR. FINLEY: Yes.

THE COURT: -- is enough perhaps as it relates to the NFLPA --

MR. FINLEY: Correct.

THE COURT: -- but it wouldn't be a theory that could bring in the other individuals who would still fall within it?

MR. FINLEY: Correct. Which I'm not even sure -- we haven't seen the amended complaint. But the original one I don't really think sufficiently alleges Sansiveri as an independent conspirator or anything in terms of the basic components of that claim, you know, an unlawful agreement, et cetera.

THE COURT: The other argument I saw -- I don't mean to cut you off if you had something else to say on that.

MR. FINLEY: That's okay.

THE COURT: The other argument I saw where -- I believe it was Mr. Howell who had independent arguments -- was on the comparators. Is that right? For sex discrimination?

MR. FINLEY: That's on the employment -- the gender discrimination claim. Yes, your Honor. So that's my second point on that claim. You know, he was no longer the executive director after July 17. You know, the classic employment actions all occurred after that date. And there's no allegation he was involved in those decisions at all.

So the only things in terms of an adverse

employment action that can be attributed to Mr. Howell are things that are not employment actions. And the allegations in the complaint are very specific as to what the purpose of those were. And then there are no comparators for Mr. Howell that are alleged, because all the comparators predate his time at the PA. So he had no personal involvement in any of that.

So that claim falls with respect to Mr. Howell, you know. Everything else separate and apart.

The IIED claim, counsel is right: The *Kerrigan* case basically is on point. That's dead in the water.

And that's the extent of it as to Mr. Howell.

THE COURT: Okay. Thank you.

MR. FINLEY: Thank you.

THE COURT: Counsel for Mr. Curtin?

MS. FITZPATRICK: Thank you, your Honor.

And we of course adopt all of our Co-Defendants' arguments. But I think there are two unique things I would like to point out on Mr. Curtin's behalf.

First of all, he is the president of the NFLPI. He does not work at the NFLPA. Ms. McPhee did not work for him. So a through line of all of our legal arguments is a causation argument. He did not have the authority to affect her employment. He was not present at the board meeting or -- I'm sorry. He's not a member of NFLPA's board.

So there's an allegation that the board received an email about the DOJ investigation. There's no allegation that Mr. Curtin was even aware of the investigation, but he's charged with trying to obstruct it.

So we really think the fact that Mr. Curtin is the president of a subsidiary and not an employee of the NFLPA and does not have the ability to affect her employment uniquely situates him legally, even though we adopt the other strong arguments made by co-counsel.

THE COURT: When you say "uniquely situates him" -- and again, I'll let you brief it -- but is that with respect to all of the claims as you see it? I mean, I guess -- is it -- let me ask it this way: That kind of tracks most easily with respect to the employment discrimination case. Is that your position also with respect to the conspiracy claim?

MS. FITZPATRICK: Yes. I'm not clear exactly on what the conspiracy claim is. And there are several generalized allegations that say "Defendants," plural, and then set forth what would be a conspiracy. I think that's maybe 117, 118 in the complaint.

But if you look at things that are specific to Mr. Curtin, it's really two allegations, one of which is that he said without Ms. McPhee present that he ordered a code red on her.

It is unmoored in time. There's no allegation she's present. It's unclear to me what a code red means or what exactly it refers to, because it's very unclear when it happened temporally or who it was said to or what the context of the conversation was.

And then there is an allegation that Mr. Curtin filed an HR complaint, and that cites to an ESPN article as its source that states that the complaint of multiple employees was based on bullying.

Those two things standing alone, which are really the only specific allegations against Mr. Curtin, are not enough for a conspiracy. They're not enough for a wrongful termination case. They're not enough for a sexual discrimination claim. They're not enough for obstruction. They're not enough for any of the claims of action when you factor in that he could not control any aspect of her employment based on his position.

THE COURT: Okay.

MS. FITZPATRICK: And the one case I want to highlight for your Honor is the *Slate v. Public Defenders* decision by Judge Howell, which really goes to the issue that you can't take sort of one fact that really goes to something like wrongful termination or retaliation and call it everything from gender discrimination to wrongful termination. Like, if you really plead an obstruction case,

you can't just also call it sexual discrimination without layering on the sort of specific fact-based conduct that would be necessary to support that type of claim.

And the *Slate* decision hits that from several different angles that we think are dispositive of the claims against Mr. Curtin.

THE COURT: Okay. Thank you.

MS. FITZPATRICK: Thank you, your Honor.

THE COURT: I appreciate it, Ms. Fitzpatrick.

Let me hear from Plaintiff's counsel on some of these questions. And to the extent part of the answer is, "We're planning to amend and buttress that," that would be a helpful thing to know.

MS. FORREST: This will be a little bit piecemeal. Obviously, it's not a full argument on the merits.

In terms of the issue of the definition of a witness, I think NFLPA's counsel was pointing to a Second Circuit case. We have a Tenth Circuit case that says essentially exactly the opposite, that you can be a witness having been contacted by DOJ before a grand jury has been convened. So I think that is a legal issue that we'll need to fully brief and that the Court will have to determine.

In terms of the actions that were taken against Ms. McPhee after her DOJ investigation disclosure, we listed a number of acts that were taken against her in the

complaint. We summarize them in our response. It was much more than simply being told not to speak to the board and not to speak to the executive committee. She was essentially being isolated so she wouldn't be privy to information that could then be passed to DOJ, is the theory of the conspiracy and how she was being obstructed.

On the conspiracy point, the complaint alleges that Sansiveri was conspiring with the NFLPA and also with the individuals, Howell and Curtin. So I don't think that that -- I don't think the intracorporate conspiracy doctrine saves either Mr. Howell or Mr. Curtin, given the participation of Mr. Sansiveri in the conspiracy and the communications between all of the individuals are sort of spread all through the complaint.

THE COURT: So is the idea that maybe they couldn't have been in a conspiracy with their employer, but they could be in a conspiracy with him?

MS. FORREST: Yes. And because there is a third party outside of the organization, that also allows for there to be a conspiracy among Howell and Curtin and the NFLPA as well.

THE COURT: I'll let you all brief that.

MS. FORREST: Okay. In terms of Mr. Howell and when he left the organization, so one of the facts that we learned from the termination notice that we will be adding

in the amended complaint is that the internal investigation began in early July, before Mr. Howell left the organization.

So the commencement of that investigation, which we contend is a sham and pretextual to both obstruct the DOJ investigation and to discriminate on the basis of her sex, Howell was still there when that investigation began.

In terms of Mr. Curtin not having authority over Ms. McPhee's employment --

THE COURT: Before you get to that, can I ask you, on the question of plausibly alleging an agreement in a conspiracy, do you anticipate changes there in the complaint?

MS. FORREST: I'm sorry, your Honor?

THE COURT: Do you anticipate changes to that in the complaint, the factual bases you have for plausibly alleging a meeting of the minds, if you will?

MS. FORREST: I think there are additional facts that we can add based on information that has come to our attention since we filed the complaint. Yes.

THE COURT: Okay.

MS. FORREST: In terms of Mr. Curtin, I think ordering a code red is commonly understood in pop culture to be a reference to *A Few Good Men* and a reference to, you know, taking the action that would remove Ms. McPhee from

the situation, remove her from the organization and sort of get her out of the way, which is what the conspirators wanted to do here.

We also cited a case that says that even if a person doesn't have direct control over their employment, their participation and coordination with those that do satisfies the -- would allow us to plead the sex discrimination claim against Mr. Curtin.

On the IIED, I just had one point on the intentional infliction of emotional distress, which I think is particularly relevant here, is that we have alleged in the complaint that the Defendants were aware of a particular emotional sensitivity that Ms. McPhee has and that she was a recovering anorexic; and this type of stress would exacerbate those behaviors and cause her both emotional distress and physical harm.

So I think that that is a very important aspect of our meeting the pleading requirements for that claim.

THE COURT: For the discrimination claim?

MS. FORREST: For the intentional infliction of emotional distress.

THE COURT: Oh, for the IIED. Of course.

MS. FORREST: Yes.

THE COURT: Can I ask, is an allegation of kind of knowledge of the vulnerability, does it come into play in

any other more explicit way?

MS. FORREST: I think under the case law, the fact that the Defendants --

THE COURT: Sorry. I'm not trying to have you argue the merits. I'm just trying to understand exactly what's in the complaint.

MS. FORREST: Yes. So what we've alleged in the complaint is that all of the actions that the Defendants took collectively can be viewed as outrageous and extreme in the collective.

And also, that because they were aware of this particular emotional sensitivity --

THE COURT: Because it was done with the knowledge.

MS. FORREST: With the knowledge, yes.

THE COURT: Got it.

And then on the breach-of-contract claim, I can't remember if you specifically addressed this, but do you agree that it kind of -- that jurisdiction over that rises and falls with the subsidiary claim?

MS. FORREST: I believe so. It's all part of the same, like, core of operative facts. And so if there's jurisdiction over the conspiracy claim and that claim survives, then you would have jurisdiction over the breach-of-contract claim as well.

THE COURT: Right. And vice versa. If there's no conspiracy claim going forward, supplemental jurisdiction with the contract claim?

MS. FORREST: I think that's right.

THE COURT: This is helpful. Let me raise one other issue. You may want to actually just stay up here a moment.

MS. FORREST: Sure.

THE COURT: So I'm going to adopt the schedule proposed unless for some reason you tell me that you need -- that you hadn't been counting on me adopting it and you need more time. But you have until April 29th to amend based on the proposed schedule. And then motions to dismiss would come in on May 29th; consolidated opposition, June 29th; and replies, July 17th.

Any objection to adopting that schedule? Speak now.

Okay. No objections. I will adopt that schedule.

There's one other outstanding issue, I understand, about the complaint and sealing the complaint. My intent has been to resolve that at the time I resolve the motion to dismiss. If a party has concerns about proceeding on that timeline, you should let me know now.

The other thing that occurs to me is if you're amending the complaint, the question about what to do with

the amended complaint comes up. My hope is that this has come up in your discussions in thinking about the schedule, but maybe it hasn't. But maybe you can tell me what you anticipate with the amended complaint.

MS. FORREST: So we've not discussed that. We have just discussed the schedule.

We were -- we thought we might get some information from you today about when you anticipated ruling on the motion to seal.

Certainly if that ruling comes before the amended complaint, then we sort of know where the boundaries are. If the ruling is going to be after that, then I think it makes sense to have discussions between the parties in terms of how we want to handle that.

THE COURT: Okay. Go ahead.

MR. HUDSON-PLUSH: Yes, your Honor.

So either --

THE COURT: Either sit or come up here just so you're speaking into a mic.

MR. HUDSON-PLUSH: Sure.

Either we can meet and confer and try to work out which paragraphs should be under seal and which aren't, I guess, or just the whole amended complaint can be ordered under seal pending your motion, which would probably be the simplest way to handle it.

THE COURT: Yes.

Go ahead, Ms. --

MS. FORREST: My client strongly feels that not the entire complaint should be under seal. Obviously, we don't think any of it should be under seal. We agreed to a temporary sealing while your Honor resolves that motion, which we are hoping we'll prevail on.

But for the amended complaint, we would object to the entire amended complaint being under seal. We're willing to work with defense counsel if there's certain aspects of it that need to be under seal pending resolution of the sealing arguments.

THE COURT: Meaning you would provide them with a copy of it and confer about which parts to seal? Is that the idea?

MS. FORREST: I believe so. Not having consulted with my client on it, I believe that's what we would endeavor to do.

THE COURT: All right. Well, look, this is helpful. If I can resolve it before then, I will resolve it before then. I don't think that ought to change the schedule. So if you don't have a resolution from me on the question of what should be sealed -- and I'm a little bit hesitant to rule on it if I don't know what's going to be in the amended complaint to know that there's still disputes,

to be honest with you. That was part of my thinking of waiting.

If I haven't ruled on it, then you've got one of two options. I think you can file it under -- the whole thing under seal under the understanding that you're not waiving arguments that it shouldn't be sealed and, you know, sticking with your earlier motions -- or briefing on the sealing question for me to then resolve. And then you can unseal portions of it according to my resolution.

Or you all can just work together and figure out at least temporarily what needs to be sealed. It's hard for me to deal with it in the abstract because I don't know exactly what the changes are and how they bear on the current pending motions. And so I'm going to need you all to tell me whether those motions are still an accurate reflection of the disputes between the parties as it relates to sealing or whether there is either some sort of supplement or quick, you know, refinement that needs to be done for those motions.

I just don't want to be deciding stale issues. It sounds like it's not likely to be stale, but it might evolve. So you tell me. If you have guidance on that now, I can take it now.

Go ahead, Ms. Forrest.

MS. FORREST: So in our response to the motion to

seal, we sort of broke things down into categories and we argued that, you know, none of this is attorney-client privileged; none of this is work-product protected; and they haven't met their burden to show that.

And then we also argued that it was not clear from their motion whether they were arguing some of it was confidential but not privileged.

I think they provided a table in their reply, which we didn't have a chance to respond to. So I think there are some sort of broad categorical issues as to whether certain things are -- you know, what constitutes attorney-client privileged material and what does not that could still be resolved.

If it is not resolved before we file an amended complaint, there may have to be another sort of, you know, line-by-line, paragraph-by-paragraph identification of what Defendants are contending needs to be under seal.

THE COURT: Okay. Anything to add to that?

MR. HUDSON-PLUSH: I mean, that's probably right. I do think the easiest course would be to just file the complaint under seal, get the ruling and then work with that ruling to figure out what, if anything, in the amended complaint should be filed under seal. That just seems to be the most efficient way to go about this without expending unnecessary resources.

THE COURT: Well, look, let me -- so we don't get in a back-and-forth, I understand the parties have different views on -- you know, Plaintiffs don't want it to be sealed if it need not be sealed. Defendants want it to be sealed to protect their interests.

I have an independent obligation as a Court to make sure that the public has access to documents that don't have a basis to be sealed, and I take it seriously. And you all briefed *Hubbard*.

So let me do this: I'm going to take a look and see whether there's guidance I can provide based on what's currently filed in the case before you file. If you don't have an opinion order from me, I will ask that you file it under seal. And then I want an update from the parties on whether I need new briefing on the sealing question. And I'll endeavor, you know, to resolve that as quickly as possible.

But once the complaint is amended, I really don't want to be in a position where I'm either not deciding stale issues or frankly not deciding all of the issues. If there's new allegations in there that fall either outside your categories or, you know, Defendants want to make clear that they're challenging, I'd rather just resolve those expediently.

MS. FORREST: If I could make a suggestion. If

we're going to initially file the entire amended complaint under seal, what I would suggest then is once we get that filed -- because it's going to be a little bit hard to negotiate over a draft amendment, I think. So perhaps we file the amended complaint under seal. We can then work amongst ourselves and perhaps come up with a version -- a redacted version that we could agree could be publicly filed pending final resolution of the sealing issues so that the entire complaint wouldn't remain under seal while the Court is taking the motion into consideration.

THE COURT: I think that makes sense.

I think Defendants should take that seriously, too, because, you know, things ought not be filed under seal unless there's a real, you know, at least colorable basis for arguing they should be sealed. And so I imagine Defendants will not try to seal anything that they don't have, having seen the briefing back and forth, a colorable argument that there is a reason for sealing it under the factors that I'm required to apply. So there ought to be something that can be released in the interim, which is usually what I require, is for parties to seal it and release a public version.

And then I think that will also facilitate me getting a version that identifies specifically where the disputes lie. Right? Because you all will have gone

through the complaint. I assume most of it will become public.

But then there will be certain things that maybe the parties agree ought to be and stay redacted, which I will not have to rule on, I suppose. I still will, I suppose, because I have my independent obligation. But I'll at least have the parties' representations that those are appropriate for sealing.

And then there will be a category of things that the parties dispute sealing on, and that will allow me to focus on what I decide. And I'll try to do that as expediently as possible at that point.

MR. HUDSON-PLUSH: Okay, your Honor.

THE COURT: None of that will change the briefing on the motion to dismiss. Right? Okay.

All right. Any other matters for me to address today? Ms. Forrest?

MS. FORREST: No, your Honor.

THE COURT: From any of Defendants' counsel?

MR. HUDSON-PLUSH: No, your Honor.

MS. FITZPATRICK: No, your Honor.

THE COURT: I'm seeing all heads shaking.

Good to be with you all. We can adjourn.

MS. FORREST: Thank you, your Honor.

THE COURT: Thanks.

I'll be staying on the bench. You all are free to go.

(Proceedings concluded at 4:02 p.m.)

**CERTIFICATE**

I, LISA EDWARDS, RDR, CRR, do hereby certify that the foregoing constitutes a true and accurate transcript of my stenographic notes, and is a full, true, and complete transcript of the proceedings produced to the best of my ability.

Dated this 10th day of April, 2026.

/s/ Lisa Edwards, RDR, CRR
Official Court Reporter
United States District Court for the
District of Columbia
333 Constitution Avenue, Northwest
Washington, D.C. 20001
(202) 354-3269